# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### Case No.:

_____X

DANIEL CAMERON M.D.

Plaintiff

-vs.-

Howard Zucker M.D. in his official capacity as Commissioner of
New York State Department of Health; Keith W. Servis in his official
capacity as Director of Office of Professional Medical Conduct )"OPMC");
Arthur S. Hengerer, M.D., in his official capacity as Chair of the BPMC
for Professional Medical Conduct ("BPMC");  Carmella Torrelli, Vice Chair of the
BPMC for Professional Medical Conduct; Katherine Hawkins, M.D., J.D.,
Executive Secretary of the BPMC; Patrick Sullivan, Investigator, NYS
OPMC; Burt Meyers MD, NYS OPMC medical director;
Kimberly A. O'Brien, administrative law judge; NYS
Department of Health, for antitrust injunction only; NYS Office
or professional Medical Conduct, for antitrust injunction only;
"John Doe" 1-108 and "Jane Doe" 1-108, the last two sets of Defendants
being fictitious names, the parties intended being the members of the
New York BPMC.

Defendants.

_____X

### VERIFIED COMPLAINT FOR ANTITRUST INJUNCTION PURSUANT TO  15 USC §26; FOR INJUNCTIVE RELEIF ENJOINING BAD FAITH PROSECUTION AND VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 USC SEC. 1983 AND FED. R. CIV. PROC.  65 AND FOR DECLARSATIORY JUDGMENT PURDUANT TO 28 USC Sec. 2201ET.SEQ.

COMES NOW the Plaintiff, Daniel Cameron M.D. by his undersigned attorney and sets

forth the follows as and for his complaint for antitrust injunctive relief pursuant to 15 USC Sec.

26, for permanent injunction under 42 USC Sec. 1983, for a Preliminary Injunction and Temporary

Restraining Order under FRCP 65 and for a declaratory judgment pursuant to 28 USC Sec. 2201

et.seq.:

1

# I.   CASE SYNOPSIS AND RELIEF SOUGHT.

## (a)   Factual case synopsis.

1.      From February, 2002 through the date of this complaint the defendants and the members of the New York BPMC of Professional Medical Conduct ("BPMC") named as John Doe 1-108  and Jane Doe 1-108, who are market participants,  conspired with each other and with the named defendants, commissioner of public health Howard Zucker, director of the Office of Professional Medical Conduct, Keith Servis and the assorted investigators and medical directors and other named defendants and entered into an agreement to violate 15 USC Sec. 1 and 15 USC Sec. 2 ("Sherman Antitrust Act").

2.      In furtherance of their conspiracy to violate the Sherman Antitrust Act the defendants staged and now are seeking to pursue a staged bad faith prosecution against the Plaintiff for providing competitive medical services to patients suffering with chronic and persistent Lyme disease and associated diseases.

3.      The competitive medical services offered by the Plaintiff were services offered by a significant segment of like medical providers under guidelines and scientifically approved medical paradigms implemented by the International Lyme and Associated Diseases Society ("ILADS").

4.      The services offered by the Plaintiff to Lyme disease patients for which the defendants are seeking to place the Plaintiff out of business through the use of the New York license  disciplinary process  have been and are in direct competition with those medical services

2

offered by allopathic hospital and office physicians who follow and use the guidelines of the Infectious Disease Society of America ("IDSA").

5.    The members of the BPMC, and the remaining defendants follow, provide and promote or have the ability to follow, provide and promote only the Lyme disease related medical services offered pursuant to the IDSA guidelines.

6.    The defendants have openly have been and are systematically seeking to exclude from the relevant markets the competition and the competitive medical services offered by physicians using ILADS guidelines. The defendants propose to attain and further their anti-competitive conduct by using the New York license disciplinary and license revocation process.

7.    To combat such anticompetitive conduct and recognizing the legitimacy of the competitive medical services offered by Lyme physicians such as the Plaintiff the New York legislature enacted Public Health Law "PHL") Sec. 230-9b and amendments to PHL Sec. 230(10)(a)(i)(A). The relatively new laws became effective on March 12, 2015.

8.    PHL Sec. 230-9b prohibits the prosecution of physicians such as the Plaintiff at the hands of the defendants for providing competitive medical services to Lyme disease patients by ILADS guidelines and criteria which are not recognized by the defendants who further and propound and protect only medical services rendered pursuant to the guidelines of the Infectious Disease Society of America ("ILADS").

9.    PHL Sec. 230(10)(a)(i)(A) prohibits the investigation of a physician such as the Plaintiff at the hands of the defendants where the basis for such investigation is related exclusively to Lyme disease related medical services rendered by ILADS guideline.

10.    From February, 2002 through the date of this complaint the members of the New York BPMC of Professional Medical Conduct ("BPMC") named as John Doe 1-108 and Jane Doe

1-108, who are market participants, conspired with each other and with the named defendants, commissioner of public health Howard Zucker, director of the Office of Professional Medical Conduct, Keith Servis and the assorted investigators and medical directors and other named defendants to fabricate and stage Plaintiff's bad faith prosecution and most recently, to violate from March 12, 2015 onward, the prohibitions of New York Public Health Law ("PHL") Sec. 230-9b and the new amendments PHL Sec. 230(10)(a)(i)(A) as more particularly set forth in this complaint.

11.      Defendants' staging and pursuit of the bad faith prosecution in violation of the explicit statutory prohibitions of PHL Sec. 230-9b and PHL Sec. 230(10)(a)(i)(A) is part of their conspiracy to violate the Sherman Antitrust Act by imposing unreasonable restraints of trade on and limiting the competitive medical services received by the members of the public which include citizens of the state of New York and of other states of the United States of America.

12.      In furtherance of their conspiracy to violate the Sherman Antitrust Act, and to pursue the bad faith prosecution the defendants used and continue to use their official capacities as state officials.

13.      The defendants pretended and pretend to act under the color of the provisions of the New York State Public Health Law for the purposes of restricting the competitive medical services offered under the ILADS guidelines in the New York markets by the Plaintiff and like physicians to consumers who have persistent and chronic Lyme disease.

14.      The defendants conspired and continue to conspire to violate 15 USC Sec. 1 and 15 USC Sec. 2 by engaging in horizontal market reallocation, price fixing and monopoly through the use of the New York disciplinary process and through the use of their official capacity as more particularly alleged below in this complaint.

4

15.     The defendants are further making use of their official capacities as state officials in furtherance of their conspiracy to violate the Sherman Antitrust Act and are seeking to create a monopoly for the benefit of allopathic physicians and physicians who follow the IDSA treatment and diagnosis guidelines to the detriment and exclusion of those treatments and diagnoses methodology used by the group of physicians under the ILADS guidelines.

16.     By excluding the competitive medical services rendered by the Plaintiff and ILADS physicians, the defendants are engaging in horizontal market reallocation.  The net effect of the exclusion of Plaintiff's competitive medical services is to force Lyme disease patients to be treated exclusively by the IDSA physicians which include the defendants themselves.

17.     In addition, as discussed below, the defendants are engaging in price fixing and the creation of a monopoly by making use of the license disciplinary process to exclude Plaintiff's competitive services as alleged in this complaint

18.     An explanation of the two competing groups of physicians and the two divergent competitive medical services and the competing guidelines offering Lyme disease related services as well as of the latest publication of the members of the IDSA group who openly state that the group associates with state medical boards to stamp out the ILADS competition is set forth below.

19.     An explanation of defendants' staging of Plaintiff's bad faith prosecution based upon his rendition of competitive medical services to patients "A" though "J" from 1997 through 2008 exclusively by ILADS guidelines and not by IDSA guidelines is also provided below.

20.     Succinctly stated, in staging the bad faith prosecution in furtherance of the conspiracy to violate the Sherman Antitrust Act, the defendants filed formal fabricated charges (Exhibit "C" hereto) which are purposely disguised to bypass the prohibitions of PHL 230-9b against such prosecution.

21.     As discussed below, the charges bear no relation to the ILADS competitive medical services which the defendants initially investigated in 2002, 2008 and 2010 and based upon which the defendants and the committee of the BPMC made a decision to prosecute the plaintiff initially.

22.     The charges do not and cannot stem from any report generated by the defendants pursuant to the investigative authority vested in them by PHL Sec. 230(10)(a)(i) through Sec. 230(10)(a)(iv).

23.     The charges  are just a vehicle used by the defendants to stage and further their bad faith prosecution against the Plaintiff as well as their conspiracy to violate the Sherman Antitrust Act.

24.     The Plaintiff began treating individuals with Lyme disease in 1988. He devoted and devotes the focus of his practice to the treatment to patients with chronic and persistent Lyme disease. He follows the only scientifically approved guidelines which are currently accepted and published by the US Government for publication in the National Guidelines Clearinghouse ("NGC"). Those are the ILADS guidelines.

25.     The Plaintiff is the leading author of the ILADS guidelines. The Plaintiff is an international renowned authority in his field of diagnosis and treatment of Lyme and associated diseases. The Plaintiff is an open critic of the physicians who practice medicine and treat Lyme and associated diseases by IDSA guidelines and of the limitations of the IDSA treatment and diagnosis guidelines.

26.     The Plaintiff treats chronic Lyme disease patients with combination long term antibiotic regiments pursuant to the ILADS standard of care and guidelines.

27.    The Plaintiff also diagnosed and diagnoses Lyme disease clinically or by confirmatory testing methodology approved by ILADS guidelines, while using antibody diagnostic testing as a reference source  rather than an exclusionary diagnostic tool.

28.    Plaintiff's patients are citizens and residents of the state of  New York, foreign citizens of states other than New York as well as international citizens and residents.

29.    The Plaintiff does not use the IDSA mandated two tiered ELISA/Western Blot testing methodology for the detection and diagnosis of Lyme. The limitations and flaws of the IDSA guidelines testing methodology are recognized by the medical community who diagnoses and treats Lyme disease.

30.    Upon information and belief the present members of the BPMC render or have the ability and potential to provide medical services related to Lyme disease in the restricted manner and fashion prescribed by the monopoly established by the defendants through their de facto adoption of the IDSA approach.

31.    Upon information and belief all of the past and present physician members of the BPMC have the ability and potential to render medical services focusing on the diagnosis and treatment of Lyme disease by IDSA standards only.

32.    As set forth below, irrespective of whether the defendants practice medicine in the field sought to be restrained by them, here the Lyme disease field,  they are still considered market participants for the purposes of antitrust claims and violations and they do not have immunity to the present lawsuit.

33.    Upon information and belief some of the members of the BPMC are also past or present members of IDSA.

34.     Consequently, the defendants market participants and supporters of the IDSA guidelines services have a motivation to put the Plaintiff out of business for the purposes of forming a monopoly and violating the Sherman Antitrust Act through horizontal market reallocation of the patient market share and though price fixing.

35.     The IDSA guidelines do not recognize and outright reject the efficacy of the treatment of Lyme with long term antibiotics beyond 28 to 30 days. The IDSA guidelines place a time restriction element on the duration of the treatment.

36.     The physicians who follow the IDSA guidelines, including the members of the BPMC openly seek and publicize the use of professional medical conduct Boards to discipline and restrict the practice of physicians who provide ILADS guidelines based competitive medical services to the public seeking Lyme disease treatments so as to form a monopoly, engage in price fixing and horizontal and vertical market reallocation.

37.     In stark contrast to the IDSA guidelines, the ILADS guidelines for the diagnosis and treatment of Lyme disease recognize the existence of chronic or persistent Lyme disease and they do advocate the use of long term antibiotics in the treatment of Lyme disease beyond 28 or 30 days.

38.     The ILADS scientific  guidelines which are used by the Plaintiff to provide competitive medical services to chronically ill Lyme patients directly conflicts with defendants' business plan, business interest and business model which follows the restrictions of the IDSA physicians, including the defendants.

39.     The IDSA guidelines regarding Lyme disease do not recognize the existence of Lyme diseases in the absence of what became known to be inadequate serological test results intended for CDC reporting criteria only. The ILADS guidelines recognize the diagnosis of Lyme

disease through clinical symptoms, physical observations and examinations and medical history as well as through the interpretation of laboratory test results.

40.    Both IDSA and ILADS are private medical organizations on equal footing. They are neither state nor federal government agencies.

41.    At all of the relevant times hereinabove and hereinafter mentioned medical services related to the diagnosis and treatment Lyme disease patients which are recognized by both IDSA and ILADS standards are acceptable to the medical community who practices in that field nationwide as well as by the statutory provisions of the state of New York.

42.    Both the IDSA and the ILADS guidelines for the diagnosis and treatment of Lyme are voluntary and both associations leave it to the physicians to clinically decide which ones to apply and follow.

43.    The IDSA is a private physician group whose members routinely use medical Boards country wide for the purposes of excluding the competition from physicians who follow ILADS guidelines though the use of the license disciplinary system.

44.    IDSA members and followers are members of the BPMC and investigators of the OPMC.  They are also the initiators of the reports based upon which the defendants seek to predicate their prosecution of the Plaintiff in order to exclude the competitive medical services offered by the Plaintiff.

45.    The defendants' anticompetitive conduct specifically targets the submarket of physicians offering medical services to patients who suffer from chronic and persistent Lyme disease and associated illnesses such as bartonella, babesiosis and ehrlichiosis and the physicians and who offer competitive medical services pursuant to the published guidelines of ILADS.

46.     As a pretext for initiating their conspiracy to violate the Sherman Antitrust Act, the defendants knowingly engaged in illegitimate investigative tactics, generated bogus investigative reports authored by individuals who support only the IDSA segment of the medical community and used the same reports to spin off disciplinary charges and stage proceedings against the Plaintiff.  These allegations are further specifically amplified below.

47.     The definition, diagnosis and treatment and medical approaches of Lyme disease is the subject matter of national controversy as the medical community is split on this issue.

48.     The physicians who follow the IDSA guidelines call the diagnosis and treatment of Lyme disease according to IDSA guidelines "conventional medicine".

49.     However, as of the date of this Verified Complaint the IDSA guidelines are no longer "conventional medicine". They are outdated and have been removed from the US Department of Health and Human Services National Guideline Clearinghouse ("NGC") for failure to meet the stringent scientific criteria promulgated by the Agency for Healthcare and Research Quality in 2013.

50.     The only guidelines for the diagnosis and treatment of Lyme Disease which were accepted by the US NGC for publication on  the Department of Health and Human Services US Government's web site are those under which the Plaintiff has been practicing which are the ILADS guidelines.

51.     The ILADS updated guidelines as revised in September, 2014 can be found at the following URL:   https://guideline.gov/summaries/sumJane/49320/evidence-assessments-and-guideline-recommendations-in-lyme-disease-the-clinical-management-of-known-tick-bites-erythema-migrans-rashes-and-persistent-disease?q=lyme+disease. They are titled "Evidence assessments and guideline recommendations in Lyme disease: the clinical management of known

tick bites, erythema migrans rashes and persistent disease". A copy of the guidelines is annexed hereto as Exhibit "B". Dr. Cameron is one of the authors and authorities of the ILADS guidelines.

53.    The IDSA guidelines promulgated in 2006 adopted the CDC surveillance criteria and definition of Lyme disease while the ILADS guidelines do not. A copy of the IDSA guidelines is annexed hereto as Exhibit "C".

54.    The CDC specifically states on its web site and in each one of its case definitions for Lyme adopted in 1995, 1996, 2008 and 2011 that its definitions of Lyme which include diagnosis and treatment statements are not intended to be used by clinicians in clinical settings and are NOT appropriate for clinical diagnosis and treatment of Lyme disease because they are to be used for CDC surveillance purposes only.

55.    The CDC does not seek to restrict the practice of medicine in the field of Lyme disease according to its restrictive surveillance criteria. See Exhibit "D" annexed hereto - CDC Lyme disease surveillance criteria and definitions.

56.    The underlying reason that the New York legislature enacted PHL Sec. 230-9b and the amendments of PHL Sec. 230(10)(a)(i) which became effective on March 12, 2015, is the protection of ILADS physicians such as the Plaintiff, against  prosecutions by the New York OPMC and the BPMC of the ILADS physicians for the benefit of the agenda and interests of the IDSA physicians.

57.    Dr. Meyers and the BPMC members are market participants and followers of the IDSA physician group seeking to place ILADS physicians out of business.

58.    Prosecuting a physician for treating Lyme disease by ILADS standards for the purposes of putting them out of business and stamping out competition, is not only a violation of the federal antitrust provisions of 15 USC Sec. 1 and 15 USC Sec.2, but is also a violation of

constitutional due process and a bad faith prosecution brought in contravention of the prohibitions of PHL Sec. 230-9b.

59.     In this case the Director of the OPMC obtained the statutory mandated consent of a committee of the BPMC (PHL Sec. 230(1)(a)(iv) to proceed to a hearing prior to December 18, 2011 before the enactment and effective date of the prohibitions of PHL Sec. 230-9b.

60.     The Director of the OPMC received the consensus of a committee of the BPMC to prosecute the Plaintiff based exclusively upon Dr. Cameron's treatment and diagnosis of Lyme by ILADS guidelines and by methodology which is now protected from prosecution by the foregoing statutory provisions and further based exclusively upon the tainted and fabricated Reports of Investigation ("ROI") generated by co-conspirator Burt Meyers at the behest of the remaining defendants.

61.     Due to ongoing state court litigation between January 2012 and March 2017, formal charges were not filed against the Plaintiff at any time preceding the enactment and effective date of the prohibitions of PHL Sec.230-9b. The Director did not obtain an new consent from the BPMC committee after the effective dates of PHL Sec.230-9b and the amendments to PHL 230(10)(a)(i)(A).

62.     After the enactment of New York PHL Sec. 230-9b and after its effective date of March 12, 2015, the leading members of the IDSA, a society which includes members and followers of the BPMC as well as the OPMC medical director Meyers, published a peer review article which called on medical Boards to prosecute physicians such as the Plaintiff who disagree with the IDSA views and who provide competitive medical services by standards other than those of the IDSA.

63.     The article called " False and Misleading Information about Lyme Disease",
published in the American Journal of Medicine on January 12, 2017 (Exhibit "E" annexed hereto,
without calling anything by name, took aim at the "politicians" who passed the New York PHL
Sec. 230-9b and openly called on medical Board, which include the defendants herein to prosecute
physicians such as the Plaintiff herein for competing for patients by providing competitive medical
services which were not in line with IDSA guidelines.

64.     The defendants took this call to arms seriously as they announced on or about
March 9, 2017 that they will be prosecuting the Plaintiff notwithstanding the new law which
protects him against such prosecutions. The followed up with this threat and now they filed formal
charges against the Plaintiff as alleged in this Complaint (Exhibit "A" hereto).

65.     The current proposed prosecution is based exclusively upon investigative reports
generated by Defendants' employees prior to the enactment and the effective dates of PHL 240-
9b and 230(10)(a)(i).

66.     Thus, in addition to conspiring with each other to violate the Sherman Antitrust Act
as set forth above and below in this complaint, the defendants are also seeking to maintain a bad
faith prosecution against the Plaintiff in contravention of the explicit prohibitions of PHL Sec.
230-9b and in furtherance of their conspiracy to violate the Sherman Antitrust Act.

**(b)       Summary of Relief sought.**

67.     The Plaintiff seeks an injunction pursuant to the Clayton Antitrust Act 15 USC Sec.
26 enjoining the defendants, their servants, agents and assigns from engaging in anticompetitive
conduct in violation of the Sherman Antitrust Act as alleged above and below in this complaint.

68.     The Plaintiff seeks a permanent injunction pursuant to 42 USC Sec. 1983 enjoining
the defendants from violating his constitutionally protected due process rights by maintaining a

bad faith prosecution in violation of PHL Sec. 230-9b and in furtherance of their conspiracy to violate the Sherman Antitrust Act.

69.     The Plaintiff seeks a declaratory judgment pursuant to 28 USC Sec. 2201 et. seq. as follows: (i) declaring defendants' conduct as alleged in this complaint as illegal and unconstitutional; (ii) declaring defendants' conduct alleged in this complaint as acts carried in furtherance of a conspiracy for violate the Sherman Antitrust Act 15 USC Sec. 1 and 15 USC Sec.

70.     The Plaintiff is also challenging the constitutionality of the following regulations of the Commissioner of Health which deprive a litigant in the administrative forum and proceedings of fundamental due process rights: (1) regulation 10 NYCRR Sec. 51.9(d)(2) which strip the Judicial Hearing Officer's powers from dismissing the proceedings based upon legal and constitutional challenges, thereby depriving the plaintiff of a meaningful opportunity to be heard at a meaningful time and in a meaningful manner regarding constitutional and legal issues challenging the charges; (2) 10 NYCRR Sec. 51.8 which prohibits any disclosure in administrative license disciplinary cases and which limit disclosure of the evidence and expert witness' opinions before trial by excluding a summary of the expert's opinions to be rendered at the time of trial. These provisions deprive an administrative litigant of the constitutionally protected right of effective cross examination.

71.     The Plaintiff alleges that the foregoing regulations should be declared unconstitutional and legally void under 28 USC 2201 as the same violate the due process clause of the Fourteenth Amendment of the US Constitution.

72.     The Plaintiff is seeking a permanent injunction pursuant to Federal Rule of Civil Procedure ("FRCVP") 65 enjoining the defendants from violating US Constitution Art. I Sec. 8 Cl. 3 as alleged below in this complaint.

73.     The Plaintiff is seeking a preliminary injunction pursuant to FRCVP 65, pending the hearing and determination of the merits of this complaint as follows:

(a)     Preliminarily enjoying the defendants, their servants agents and assigns from further engaging in anti-competitive conduct in violation of the Sherman Antitrust Act by using the New York formal license disciplinary process to further their conspiracy to violate the Sherman Antitrust Act by unreasonable restricting Plaintiff' competitive medical services rendered pursuant to ILADS guidelines as alleged in this complaint;

(b)     Preliminarily enjoining the defendants, their servants, agents and assigns from violating or causing to violate Plaintiff's constitutionally protected due process rights as set forth in this complaint by maintaining a bad faith prosecution;

(c)     Preliminarily enjoining the defendants from taking any action or causing any action to be taken against Plaintiff's medical license as such actions are illegal, unconstitutional and in derogation of Plaintiff's due process rights as alleged in this complaint;

(d)     Preliminarily enjoining the defendants from proceeding or causing to proceed with the license disciplinary process including the first hearing which is now scheduled to proceed on June 12, 2017 (Exhibit "A" annexed hereto)

(e)     Preliminarily enjoining the defendants from violating or causing to violate    US Constitution Art. I Sec. 8 Cl. 3 as alleged in this complaint.


## II.     IDENTITY OF THE PARTIES

## (A).   GENERAL ALLEGATIONS REGARDING IDENTITY OF THE PARTIES.

74.     Plaintiff is an individual resident of the State of New York.  The Plaintiff is licensed to practice medicine in the State of New York pursuant to the medical license issued to him by the

authorities of the State of New York. Plaintiff maintains an office and a principal place of business at 657 E Main St Ste 5, Mount Kisco, NY 10549.

75.    The Defendant Patrick Sullivan ("Sullivan") is and at all times hereinabove and hereinafter was an investigator, individual and an employee, servant and assign of Defendant Office of Professional Medical Conduct ("OPMC") and of the Department Of Health ("DOH").

77.    The Defendant Burt Meyers MD "Meyers" is and at all of the relevant times hereinabove and hereinafter was a medical director and interviewer and an agent, employee and assign of the defendant OPMC.  Upon information and belief Meyers was and still is a physician specializing in the "conventional" treatment of infectious diseases, including Lyme disease, under the guidelines of the Infectious Disease Society of America ("IDSA").

78.    At all of the times hereinabove and hereinafter mentioned Meyers repudiated and still repudiates the treatment of Lyme disease by any methodology and protocols other than those specified in the IDSA guidelines.

79.    The defendants purposely selected Meyers to conduct and commandeer Plaintiff's statutory interviews in 2008 and 2010 in furtherance of their conspiracy to violate the Sherman Antitrust Act while aiming to eliminate the competitive medical services rendered by the Plaintiff to Lyme disease patients pursuant to ILADS guidelines.

80.    Upon information and belief Meyers is currently retired. Meyers is made a party defendant to this action by virtue of the fact that he conspired and still continues to conspire with the defendants to violate the Sherman Antitrust Act by generating or causing to have generated the substance of the post interview investigative reports ("ROI") which specifically targeted the Plaintiff and his use of Lyme diagnosis and treatment methodology by ILADS for the purposes of

16

eliminating the same services from the New York medical services market through the use of the license disciplinary process.

81.     Upon information and belief, and at all times hereinabove and hereinafter mentioned, the Defendant Howard Zucker M.D. ("Zucker" or "Commissioner") was and still is the commissioner of DOH (hereinafter "Commissioner").

82.     Upon information and belief, the commissioner has a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007. Zucker is a market participant for the purposes of the antitrust claims set forth in this complaint. He is the leading state officer of the Department of Health and he is licensed in the profession which the Board of Professional Medical Conduct regulates, namely, medicine.

83.     Upon information and belief, and at all times hereinabove and hereinafter mentioned the Defendant Keith W. Servis was and still is the director of OPMC (hereinafter "Director").   Upon information and belief, the Director has a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007.

84.     The Director is made a party defendant to this action by virtue of his participation in defendants' conspiracy to violate the Sherman Antitrust Act and to stage the bad faith prosecution against the Plaintiff as alleged above and below in this complaint.

85.     Upon information and belief, and at all times hereinabove and hereinafter mentioned the Defendant Arthur S. Hengerer MD was and still is the chairman of the BPMC of Professional Medical Conduct (hereinafter "Chairman").   Upon information and belief, the Defendant Chairman has a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007.

86.     Hanenger, a market participant for the purposes of the antitrust action, is made a

party defendant to this action by virtue of his participation in defendants' conspiracy to violate the Sherman Antitrust Act and to stage the bad faith prosecution against the Plaintiff as alleged above and below in this complaint.

87.     Upon information and belief, and at all times hereinabove and hereinafter mentioned the Defendant Carmella Torelli  ("Torelli") was and still is the vice chairwoman of the BPMC of Professional Medical Conduct. Upon information and belief, the Defendant Vice Chairman has a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007.

88.     Torelli is made a party defendant to this action by virtue of his participation in defendants' conspiracy to violate the Sherman Antitrust Act and to stage the bad faith prosecution against the Plaintiff as alleged above and below in this complaint.

89.     Upon information and belief, and at all times hereinabove and hereinafter mentioned the Defendant Katherine Hawkins M.D. / JD ("Hawkins") was and still is an officer and the executive secretary of the BPMC of Professional Medical Conduct (hereinafter "Secretary").

90.     Upon information and belief, the Defendant Secretary has a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007. Hawkins, a market participant for the purposes of this action, is made a party defendant to this action by virtue of his participation in defendants' conspiracy to violate the Sherman Antitrust Act and to stage the bad faith prosecution against the Plaintiff as alleged above and below in this complaint.

91.     The New York Board of Professional Medical Conduct ("BPMC") is a statutory agency whose members are appointed pursuant to PHL Sec. 230(1).

92.     According to the same statutory provisions, the BPMC "shall consist of not fewer than eighteen physicians licensed in the state for at least five years, two of whom shall be doctors

of osteopathy, not fewer than two of whom shall be physicians who dedicate a significant portion of their practice to the use of non-conventional medical treatments who may be nominated by New York state medical associations dedicated to the advancement of such treatments, at least one of whom shall have expertise in palliative care, and not fewer than seven lay members. An executive secretary shall be appointed by the chairperson and shall be a licensed physician. Such executive secretary shall not be a member of the BPMC, shall hold office at the pleasure of, and shall have the powers and duties assigned and the annual salary fixed by, the chairperson. The chairperson shall also assign such secretaries or other persons to the BPMC as necessary".

93.     According to the BPMC 2015 report to the legislature issued in accordance with PHL 230(14), the BPMC consists of 79 physician members and 29 non-physician lay members, for a whopping total of 108 members. This is one of the largest regulatory Boards of its kind in the Country.

94.     The BPMC, which is a state public agency does not disclose the identity of its members to the public and it does not make any such information readily available to the public.

95.     Consequently, the true identity of the BPMC current members is unknown to the Plaintiff.  Therefore, the BPMC members are sued herein as John Doe and Jane Doe 1 through 108.

97.     Disciplinary proceedings are conducted by a committee of three members of the BPMC (one lay person and two physicians) as provided by PHL Sec. 230(7) and 230(6). The committee is appointed by the chairperson.

98.     As of the date of this Verified Complaint, the BPMC chair person has not yet appointed a committee to preside over the disciplinary hearings proposed to be instituted by the defendants as alleged in this complaint.

99.     The defendant Kimberly A. O'Brien ("O'Brien") is Administrative Law Judge of the New York State Department of Health who was assigned to preside over the hearing scheduled and sought to be held in furtherance of defendants' conspiracy to violate the Sherman Antitrust Act and in furtherance of the conspiracy to maintain a bad faith prosecution. The defendant O' Brien has a principal place of business c/o New York Department of Health Bureau of Adjudication Riverview Center, 150 Broadway - Suite 510, Albany, New York 12204-2719 and 90 Church Street, 4th Floor, New York, NY 10007.

100.    The Defendants "John Doe" 1-108 and "Jane Doe" 1-108, are fictitious names, the parties intended being the members of the New York State BPMC. Upon information and belief, the Defendants "John Doe" 1-108" and "Jane Doe" 1-108" have a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007.

101.    Upon information and belief, and at all times hereinabove and hereinafter mentioned the Defendant NYS Department of Health ("DOH") was and still is an agency of the State of New York and the umbrella agency for the Office of Professional Medical Conduct and the BPMC. DOH has a principal place of business at have a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007.

102.    The defendant Office of Professional Medical Conduct ("OPMC") is and at all of the relevant times hereinabove and hereinafter was an agency of the State of New York created and doing business under PHL Sec. 230. OPMC has a principal place of business at have a principal place of business at 90 Church Street, 4th Floor, New York, NY 10007.

### III.   THE BPMC MEMBERS AND THE REMAINING INDIVIDUAL DEFENDANTS AS WELL AS THE DEFENDANT AGENCIES DO NOT HAVE IMMUNITY AGAINST THE CLAIMS FOR VIOLATION OF THE SHERMAN ANTITRUST ACT.

103.    The BPMC is an agency of the state of New York. The BPMC is a regulatory and enforcement licensing agency established under the provisions of PHL 230.

104.    The BPMC is charged with administering and enforcing the medical licensing regulatory system and the practice of medicine in New York. The BPMC does not act in an advisory capacity. The BPMC is not an agency which is authorized to be used by its members to further private financial interests and to unreasonably restrict trade in violation of the Sherman Antitrust Act.

105.    The BPMC is staffed and controlled by individuals who have financial interests in the occupation that is being regulated, namely medicine. The BPMC is staffed by health care practitioners who are and were at all of the relevant times hereinabove and hereinafter mentioned engaged in the practice of medicine for profit in the state of New York.

106.    At all the times relevant to this action, a majority of the members of the BPMC were and are physicians or healthcare practitioners licensed and regulated by the BPMC.

107.    They have incentive to limit competition from other physicians who provide competitive medical services of a different type and in a different manner than the services provided by the defendants.

108.     In this case it is alleged that the members of the BPMC, as well as the market participant commissioner conspired and continue to conspire with each other to eliminate competitive medical services offered by Dr. Cameron under ILADS guidelines, for the benefit of physicians providing allopathic medical services and Lyme disease related medical services offered pursuant to IDSA guidelines.

109.    The physician members of the BPMC are "market participants" for the purposes of the Sherman and Clayton Antitrust Acts.

110.    A member of a state regulatory BPMC is considered to be an active market participant in the occupation the BPMC regulates if such person (i) is licensed by the BPMC or (ii) provides any service that is subject to the regulatory authority of the BPMC. These are the present members of the BPMC.

111.    If a BPMC member participates in any professional or occupational sub-specialty that is regulated by the BPMC, then that BPMC member is an active market participant for purposes of evaluating the active supervision requirement. In this case a majority of the BPMC members engage in the occupation which is regulated by the BPMC, namely the practice of medicine.

112.    It is no defense to antitrust scrutiny that the BPMC members themselves are not directly or personally affected by the challenged restraint.

113.    Even if the members of the BPMC are physicians who do not offer the same Lyme disease medical services pursuant to ILADS guidelines as the ones offered by the Plaintiff or by the competing IDSA guidelines, their control of the medical BPMC nevertheless triggers the requirement for active state supervision.

114.    This is because the physicians are licensed, and their services regulated by, the BPMC. At all the times relevant to this action the State of New York does not have direct supervision over the action of the BPMC members.

115.    Active market participants, as the physician members of the BPMC, need not constitute a numerical majority of the members of a BPMC in order to trigger the requirement of active supervision. A decision that is controlled, either as a matter of law, procedure, or fact, by

active participants in the regulated market (*e.g.*, through veto power, tradition, or practice) must be actively supervised to be eligible for the state action defense.

116.    Neither the BPMC nor the individual members of the BPMC have state immunity to this action because the State of New York did not provide for any mechanism of active supervision of the BPMC's and BPMC members' decisions and activities.

117.    The challenged restraint of trade, is the defendants' proposed action to revoke Plaintiff's license through the formal disciplinary process in order to eliminate all of the Lyme related competitive services offered by the Plaintiff pursuant to ILADS guidelines.

118.    The proposed restraint of trade set forth in this complaint is not clearly articulated nor affirmatively expressed as a state policy either by statute, regulation or anything else.

119.    The state of New York did not foresee or implicitly endorse the anti-competitive effect of the state agencies' and state agents' actions in restricting Lyme disease competitive medical services to those offered by physicians under IDSA guidelines exclusively. To the contrary, the New York legislature enacted PHL Sec. 230-9b which prohibits such restraint of trade through the use of the license disciplinary process.

120.    The proposed restraints of trade sought to be imposed by the defendants through the elimination of Plaintiff's medical practice in its entirety, are not actively supervised by a state agency or a state official that is not a participant in the market that is being regulated. In fact, the BPMC and its market participant members are the only entities and individuals who are empowered to maintain in place the unreasonable restraints of trade which are the subject matter of this litigation through the use of the license disciplinary process.

121.    The state of New York does not have in place any independent supervision scheme or mechanism which oversees the actions of the BPMC and its members.

122.   There is no existing state supervisor who must review the substance of the anticompetitive decision of the BPMC to prosecute physicians such as the plaintiff for the purposes of violating the Sherman Antitrust Act.; there is no supervisor who or which must have the power to veto or modify decisions of the BPMC to ensure that they accord with state policy; the mere potential for state supervision is not an adequate substitute for a decision by the State.

123. Consequently, the administrative and judicial appeals process and the existence of the possibility of review by the Administrative Review Board of the BPMC is not a substitute for immediate state supervision of the BPMC's acts and decisions to go forward with the disciplinary process to further the conspiracy to violate the antitrust statutes and to stage the bad faith prosecution.

124.   Public Health Law Sec. 230(i) provides that  the determinations of a committee on professional conduct of the state board for professional medical conduct may be reviewed by the administrative review board ("ARB") for professional medical conduct.

125.   However, the ARB review is not one which examines decisions of the committee and the prosecution itself vis a vis violations of the Sherman Antitrust Act. The ARB has not authority to investigate and look inside the conspiracy to violate the Sherman Antitrust Act or to stage and maintain a bad faith prosecution.

126.   The ARB shall review whether or not the determination and the penalty are consistent with the findings of fact and conclusions of **law** and whether or not the penalty is appropriate and within the scope of penalties permitted by section two hundred thirty-a of this title. PHL Sec. 23-c(4)(b).

127.   Consequently, there is no state supervision of the decisions of the BPMC insofar as the     same     further     a     conspiracy     to     violate     the     Sherman     Antitrust     Act.

24

128.    A regulatory agency, such as the BPMC in this case, cannot issue determinations, such as the ones in the present case, which restrict the type of medical services rendered to patients seeking competitive medical services provided to chronic Lyme disease patients under the ILADS guidelines.

129.    The BPMC and its members are not authorized or empowered to make use of the BPMC members' official authority to promote the financial interest of one group of physicians (those practicing by IDSA guidelines) while eliminating competitive medical services offered by physicians   practicing by ILADS guidelines.

130.    The BPMC and its members are not authorized or empowered to make use of the BPMC members' official authority to promote the personal financial interests of the BPMC members associated with the protection of medical services rendered pursuant to IDSA guidelines. Such conduct is not protected under the "state action" immunity against the present antitrust claim.

131.    In the context of license disciplinary proceedings, active supervision by the state may be provided by the administrator who oversees the regulatory BPMC (*e.g.*, the Commissioner of Public Health), the state attorney general, or another state official who is not an active market participant. New York does not have any such active supervision by the Commissioner.

132.    A disciplinary action which seeks to restrict the medical services provided by an entire segment of the medical providers in New York who provide Lyme disease related services by ILADS guidelines, as protected against prosecution by PHL Sec. 230-9b, significantly impacts market competition.

133.    For all of the foregoing reasons the defendants do not have state immunity against the claims of violation of the Sherman Antitrust Act.

## IV.    THE INDIVIDUAL DEFENDANTS DO NOT HAVE IMMUNITY AGAINST AN ACTION FOR INJUNCTIVE RELIEF UNDER 42 USC Sec. 1983.

134.    The individual defendants sued herein are state officials.

135.    It is alleged that the state officials are acting and are about to act in the immediate future in violation of Plaintiff's constitutionally protected due process rights by staging a bad faith prosecution in violation of PHL 230-9b and in furtherance of their conspiracy to violate the Sherman Antitrust act.

136.    The Plaintiff has a constitutionally protected right to be free from bad faith prosecutions.

137.    Maintaining a bad faith prosecution as alleged in this complaint violates Plaintiff's constitutional rights.

138.    The Plaintiff is seeking to enjoin future violation of his constitutional rights by the defendants though the bad faith prosecution as set forth below in this complaint.

139.    The Plaintiff can maintain an action for injunctive relief against state officials pursuant to 42 USC Sec. 1983 seeking to enjoin a bad faith prosecution and the individual defendants do not have immunity against such relief sought.

## V.    JURISDICTION AND VENUE

140.    This Court has exclusive subject matter jurisdiction to adjudicate Plaintiff's Sherman Antitrust claims pursuant to 28 USC Sec. 1337, 28 USC Sec. 1331. Jurisdiction is also properly vested in this Court pursuant to 15 USC Sec. 4 and 15 USC Sec. 26.

141.    This Court has subject matter jurisdiction to adjudicate Plaintiff's Clayton Antitrust Act prayer for relief under 15 USC Sec. 26 pursuant to 28 USC Sec. 1337 and 28 USC Sec. 1331

because the legal questions alleged in this complaint arise under the statutes of the United States

of America.

142.    This Court has subject matter jurisdiction to adjudicate Plaintiff's constitutional

claims under 42 USC Sec. 1983 under the provisions of 28 USC Sec. 1331.

143.    Venue is properly based in the Southern District of New York pursuant to 28 USC

Sec.  because the defendants maintain their principal place of business within the territorial venue

of this Court at 90 Church Street, New York, NY and a substantial part of the facts giving raise to

plaintiff's claims occurred within the territorial venue of the Southern District of New York.


## VI.   FACTUAL BACKGROUND AND ALLEGATIONS RELATED TO CALIMS OF CONSPIRACY TO VIOLATE THE SHERMAN ANTITRUST ACT AND TO STAGE THE BAD FAITH PROSECUTION IN VIOLATION OF PHL Sec. 230-9b.

**(a).    In general - the defendants used and continue to use their official positions and the disguise and cover of the New York investigative, and      license disciplinary process in furtherance of their conspiracy to violate 15 USC Secs. 1 and 2.**

144.    The defendants conspired and continue to conspire with each other to violate 15

USC Sec. 1 by engaging in horizontal restraint of trade, horizontal market allocation, price fixing

and unreasonable restraint of trade through the exclusion of ILADS guidelines based medical

services in New York.

145.    The defendants conspired and continue to conspire with each other to violate 15

USC Sec. 2 by attempting to create a monopoly of allopathic and IDSA guidelines based medical

services provided by office and hospital physicians to the exclusion of ILADS guidelines based

medical services.

146.    The present Statement of Charges ("SOC") (Exhibit "D" annexed hereto) set forth disciplinary claims against  the plaintiff in connection with seven  patients "A" through "G" for treatment provided to them by the Plaintiff as far back as twenty years ago, with the most recent treatment provide in 2008.

147.    Patients "A" through "G" were diagnosed and treated by the Plaintiff exclusively for the medical condition of persistent Lyme disease and nothing else.  They were provided ILADS guidelines based medical services and not IDSA guidelines based medical services related to Lyme disease.

148.    To further their conspiracy to violate 15 USC Sec. 1, the defendants availed and continue to avail themselves of the official positions, powers and provisions of the medical investigative and disciplinary process governed by PHL Sec. 230.

149.    They fabricated knowingly false investigative reports, as specifically set forth in Plaintiff's affidavit attached hereto as Exhibit "F" and the exhibits annexed thereto, to substantiate and provide a basis and a pretext for the Director's and Committee's conspiracy to violate the Sherman Antitrust Act by recommending that the staged bad faith prosecution in violation of PHL Sec. 230-9b take place.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**(b)    Factual background  regarding the acts
taken in furtherance of the conspiracy and in
preparation for the staging of the bad faith
<u>prosecution.</u>**

150.    The defendants took overt actions in furtherance of their conspiracy to violate the Sherman Antitrust Act and to stage the bad faith prosecution.

151.    Without having received any complaints from any agency, individual or entity,  the defendants: (i) staged random demands for medical records specifically targeting patients who

28

were treated by the Plaintiff exclusively for persistent Lyme disease with protocols pursuant to ILADS guidelines; (ii) they appointed IDSA affiliated or proponent interviewers and medical directors (including defendant Burt Meyers) who distorted the post interview reports by falsely representing the entries in the medical record and Dr Cameron's answers; (iii) first encouraged and facilitated and then made use of Meyers' own recitations and  infusion of  comments and biases furthering the IDSA medical service agenda; (iv) used the false investigative reports generated by Meyer and Sullivan as a predicate to secure the consensus of a committee of the BPMC for prosecution; (v)  formulated the statement of charges in such a fashion as to give the appearance of legitimacy of their prosecution while masking their conspiracy to eliminate the ILADS based medical services offered by the Plaintiff to Lyme disease patients.

152.    By way of background, the first time when the defendants staged the violation of the Sherman Antitrust Act by announcing their intent to file the Statement of Charges was on or about December 18, 2011. The 2011 Statement of Charges was not filed at any time.

153.    On or around same time, the Plaintiff filed a state court action against the defendants seeking the stay of the charges based upon state law provisions. The state court action was not predicated upon the new law prohibiting such prosecutions, namely PHL Sec. 230-9b and the amendments to PHL Sec. 230(10)(a)(i)(A), which became effective on May 2015.

154.    The parties agreed voluntarily to a stay of the administrative proceedings pending the resolution of the state court claims and ensuing appeals.

155.    While the state court action  and related  appeals were pending the legislature enacted PHL Sec. 230-9b and the amendments to PHL Sec. 230(10)(a)(i)(A). As set forth above, those statutes explicitly prohibit the present prosecution against Plaintiff from taking place at all.

156.    After the completion of the state court litigation, on or about March 9, 2017 the

defendants, through counsel announced that notwithstanding the new laws, they will proceed to prosecute the Plaintiff based upon the same old SOC related to Plaintiff's rendition of competitive medical services by ILASDS guidelines.

157.    An explanation regarding the staging of the conspiracy and overt acts to continue to violate the Sherman Antitrust Act and to stage the bad faith prosecution is set forth hereinafter and in Plaintiff's affidavit attached hereto as Exhibit "F".

**(b)**    **The 2002 investigation.**

158.    On or about February 2002, the OPMC commenced an investigation into Dr. Cameron's general practice of medicine in New York under case No. NR-02-11-5936A. See Plaintiff's affidavit, Exhibit "F" hereto.

159.    The 2002 inquiry was conducted indiscriminately and aimlessly and was limited to the general medical practices of the Plaintiff in diagnosing and treating Lyme disease by the subsequently published ILADS guidelines (in 2004) and nothing else. In 2002 neither IDSA nor ILADS had published guidelines for the diagnosis and treatment of Lyme.

160.    That inquiry included the charts of some eleven patients including patients who are the subject matter of the present bad faith prosecution as follows:  EK (Patient "C" in the SOC), IH (Patient "D" in the SOC), AR (Patient "A" in the SOC.

161.    On or about July 1, 2002, the Plaintiff was subjected to an interview pursuant to PHL Sec. 230(10)(a)(iii) regarding his care of the eleven patients then under scrutiny.  See Plaintiff's affidavit.

162.    No action was taken by the OPMC with respect to case No. NR-02-11-5936A.

163.    The interviewer is now deceased and the Report of Interview ("ROI") of the 2002 investigation as well as the correspondence and documents related to the same are in the exclusive

possession of the Defendants or alternatively unavailable for discovery and cross examination. See Plaintiff's affidavit.

165.    The only activity on investigation NR-02-11-5936A of which the Plaintiff has any record is the request made in July 21, 2003 by his then attorney with respect to medical records and correspondence from the OPMC related to the same dated July 14, 2003. See Plaintiff's affidavit.

166.    There was no activity in case No. NR-02-11-5936A since 2003 onward. See Plaintiff's affidavit.

(c).    **The 2010 investigation, the statutory interview and the ROI.**

167.    In 2008 and in 2010, without having received  any specific complaint and without the  issuance of  an Order of a comprehensive practice evaluation  having been issued under PHL Sec. 230(10(iv) the OPMC recommended a general inquiry into Plaintiff's general practice of medicine of medicine regarding his diagnosis and treatment of Lyme diseases by requesting the production of some twelve patient records. There were newly opened cases bearing Nos. CR-08-04-22888-A; CR-08-08-5008-A; CR 10-03-2010-A and CR-10-08-5079. See Exhibit "F" hereto.

168.    By letter dated August 17, 2010, the defendants advised the Plaintiff of the scheduling of a statutory interview pursuant to PHL Sec. 230(10)(a)(iii) on September 14, 2010. See Exhibit "F" and attachments annexed thereto.

169.    That letter purported to identify the issues which were the subject matter of the investigation for the first time. As it can be seen from the same letter without exception, the defendants identified the general subject matter of the inquiry with respect to each and every identified patient in general terms as "**diagnosis of Lyme disease, …differential diagnosis and**

**treatment".**  The relevant patients and issues under review were: (i) EW - for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered in July 2008 (EW is Patient "E" in the current SOC);   (ii) MV for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered between February 2008 and March 2008 (MV is patient "F" in the current SOC); (iii) EK for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered between June 1999 through 2007 (EK is patient "C" in the current SOC); (iv) DG  for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered between October 1998 through March 2008 (DG is patient "B" in the current SOC); (v) IH for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered between October 1997 through 2004 (IH is patient "D" in the current SOC); (vi) AR for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered between June 1999 through 2007 (AR is patient "A" in the current SOC).

170.    Patient RJ (Patient "G" of the SOC) was not named in the August 17, 2010 letter nor was the Plaintiff ever alerted or given the pre-requisite pre prosecution statutory interview with respect to any issued regarding patient "G". See Plaintiff's affidavit.

171.    Without exception, the statutory letter of August 17, 2010 specifically identified the focus of defendants' interview and investigative process on Dr. Cameron's diagnoses and treatment of Lyme in each and every one of the identified patients.

172.    Without exception, the diagnosis and treatment of Lyme in each one of the identified patients, who are now the subject matter of the instant prosecution were rendered by Dr. Cameron in accordance with ILADS and not IDSA guidelines.

173.    Couching the current SOC (Exhibit "D" hereto) in terms other than the treatment

and diagnosis and Lyme disease by ILADS standards does not vitiate the fact that the only issues identified by the defendants with respect to all of the patients in the SOC (Excluding patient "G" who was not identified at all) pertain to the treatment and diagnosis of Lyme disease by Dr. Cameron and no other identified issue. See Plaintiff's affidavit and attachments thereto.

174.    The Plaintiff attended the interview of September 14, 2010. At the interview, he was questioned at length by defendant Meyers regarding the treatment and diagnosis of Lyme disease exclusively and nothing else. See plaintiff's affidavit and attachments thereto including defendants' Report of Investigation ("ROI"). The initial statutory interview was not completed on September 14, 2010.

175.    By letter dated October 28, 2010 the defendants notified the Plaintiff that they will continue the statutory interview pursuant to PHL Sec. 230(10)(a)(iii) on December 13, 2010. The relevant issues and patients which were the subject matter of the investigation were identical as the ones recited above with the exception that patient RG (RG is patient "G" in the SOC) was added. The issues identified with respect to patient RG are as follows: RG for care including **diagnosis of Lyme disease, ...differential diagnosis and treatment"** rendered between August 2009 through September 2010.

176.    The letter of October 28, 2010 did not identify any other issues than Plaintiff's diagnosis and treatment of Lyme disease in patient RG ("G" in the SOC). The Plaintiff diagnosed and treated patient RG exclusively by methodology recognized by ILADS guidelines and not by IDSA guidelines.

177.    The Plaintiff attended the interview of December 3, 2012. At the interview, he was questioned at length by defendant Meyers regarding the treatment and diagnosis of Lyme disease exclusively and nothing else. See plaintiff's affidavit and attachments thereto including defendants'

Report of Investigation ("ROI").

178.   The interviews were plagued by defendant Meyers' infusions of his own IDSA standards and biases and aggressive questioning aimed at eliciting answers aimed at Plaintiff's treatment and diagnosis of Lyme pursuant to ILADS guidelines. See Plaintiff's Affidavit (Exhibit "F" hereto).

179.   Under the relevant provisions of New York PHL Sec. 230(10)(a)(iii)(B) after the completion of the interview the defendants have to provide the Plaintiff with an Report of Investigation ("ROI") which identifies all issues flushed out during the interview. The defendants also have to give the Plaintiff an opportunity to respond to such issues.

180.   On January 12, 2011 the defendants issued the ROI to the Plaintiff. See Plaintiff's affidavit Exhibit "F" hereto and attachments thereto. As it can be seen from plaintiff's affidavit, the ROI is replete with defendant Meyer's infusions of his own bias and statements in such a fashion as to facilitate Plaintiff's bad faith prosecution for rendering competitive medical service pursuant to ILADS standards.

181.   The tainted and knowingly false ROI, as more particularly described in Plaintiff's affidavit (Exhibit "F" hereto), is the at the core of the bad faith prosecution. The ROI is part of the documents submitted by the Director to the Committee of the BPMC in accordance with PHL Sec. 230(10)(a)(iii)(C). The fabricated and tainted ROI squarely aims at the elimination of ILADS Lyme related services from the New York Market.


182.   The taint and fabrication of the ROI was used to secure the participation of the co-conspirators members of the BPMC committee to create the illusion of legitimacy behind the use of the license prosecution process so as to facilitate the elimination of Plaintiff's competitive

medical services as set forth in this complaint.

183.   By letter dated February 23, 2011, the Plaintiff through his attorney provided corrective information to the allegations of the ROI. Upon information and belief, contrary to the mandatory provision of PHL Sec. 230(10)(a)(iii)(C), in furtherance of the conspiracy to facilitate the bad faith prosecution and the violation of the Sherman Antitrust Act, Plaintiff's corrections to the ROI and additional information were not presented to the Committee.

184.   The BPMC committee which concurred to Plaintiff's prosecution are market participants and co-conspirators in the violation of the Sherman Antitrust Act.

185.   As set forth above and below,  the concurrence of the BPMC committee was tainted and obtained in furtherance of the staging of the bad faith prosecution and of the conspiracy to violate the Sherman Antitrust Act before the effective date of PHL 230-9b which specifically prohibits such prosecutions from taking place.

186.   Specific facts regarding the fabrication and tainting of the ROI in furtherance of defendants' conspiracy to violate the Sherman Antitrust Act and to stage the bad faith prosecution are included in Plaintiff's affidavit annexed hereto as Exhibit "F".

## VI.  RELEVANT MARKETS

187.   The following are the relevant product markets which pertain to this complaint:

**(a).    Physician services market and the sub market of Lyme disease
          and associated diseases medical services under ILADS guidelines.**

188.    The Plaintiff competes with other office and hospital based physicians, including the physician members of the BPMC, in providing competitive medical services including Lyme and associated diseases related services pursuant to ILADS guidelines to patients who seek them.

189.    The medical services rendered by the plaintiff under the ILADS guidelines is a recognized submarket of services protected against prosecution and persecution investigations respectively under PHL Sec. 230-9b and the 2015 amendment of PHL Sec. 230(10)(a)(i)(A).

190.    The medical services offered by the Plaintiff under the ILADS guidelines is also a submarket of services recognized by the US DHHS adoption of and publication of the ILADS guidelines and its incorporation into the NGS as set forth above in this complaint.

191.    The medical services provided by the plaintiff under ILADS guidelines is also a submarket recognized and protected against prosecutions under Education Law Sec. 6527(e)(4) as referenced in PHL Sec. 230-9b.

192.    The medical services product market has reasonable interchangeability of use or the cross-elasticity of demand between the product itself, namely the ILADS guidelines based services offered by the Plaintiff and substitutes for it, and the medical services which are the considered by some as general allopathic services offered by physicians such as the defendant physicians themselves pursuant to IDSA guidelines.

193.    The relevant general medical services market includes a group of sellers or producers, in this case allopathic physicians sitting on the BPMC and allopathic physicians who are not members of the BPMC and who provide exclusively IDSA guidelines based services, who have actual and potential ability to deprive the Plaintiff and the group of physicians offering ILADS guidelines based medical services of market share of patient business. The relevant patient

business segment is that of patients who seek the type of sub market services offered by the Plaintiff and others who offer similar medical services.

194.     Several "practical indicia" of an economically distinct submarket are identified by relevant principles of law as follows: industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.

195.     The alleged submarket of ILADS guidelines based medical services offered to the public by the Plaintiff and other physicians in New York is economically distinct from the general product market of allopathic medical services for the following reasons: (1) the submarket is recognized both by patients and by the defendants themselves as a separate submarket of medical services and a separate entity. See PHL Sec. 230-9b referencing Education law 6527; PHL Sec. 230(10)(a)(i)(A); (2) the ILADS guidelines based medical services have peculiar characteristics because they do not rely exclusively on conventional or  pharmaceutical drug treatments, set dosages and durations of medications and rigid two tiered diagnostic criteria using ELISA/Western Blot immunoassay testing to the exclusion of any other diagnostic modalities recognized by ILADS guidelines; (3) patients seeking ILADS based and integrative medicine services do not rely on insurance coverage but have to pay out of pocket because insurance plans typically do not cover such services; (4) the type of patients seeking ILADS guidelines based medical service is different and more educated and sophisticated than the patients seeking strictly allopathic treatment pursuant to IDSA guidelines; (5) patients who seek ILADS guidelines based services suffer from persistent and chronic Lyme disease which benefit from  the treatment of the disease with combination long term antibiotics.

196.    The defendants hold market power because they can control the medical services market by simply eliminating the competitive ILADS related medical through the use and under the cover and disguise of the New York disciplinary statutes. The defendants also hold market power because they have a dominant market share of the medical services. That dominant share is the general allopathic medicine services provided under the IDSA guidelines.

**(b).    The Geographic Market.**

197.    The relevant geographic market is New York. In order to practice medicine in New York and to provide medical services, one must possess a valid unrestricted medical license issued by the BPMC and sanctioned by the defendants.

198.    Defendants' proposed action sought to be taken against the Plaintiff seeks to restrict and limit competitive medical service alternatives for patients in New York and form patients from outside of New York who are seeking to receive ILADS guidelines based medical services in New York

## VII. THE ANTICOMPETITVE CONDUCT

199.    The defendants were made aware many times that the plaintiff practices exclusively by ILADS guidelines and that he offers competitive medical services pursuant to the same scientific standard of care.

200.    They were and are aware that the defendants themselves and the providers of medical services exclusively pursuant to  IDSA guidelines are competitors of the Plaintiff for the market share of consumers and patients who seeks competitive medical services for Lyme disease and related illnesses.

201.   The offering of competitive medical services in the submarket offering ILADS based medical services is protected against administrative prosecution and against investigations under the provisions of PHL Sec. 230-9b and the amendments to PHL Sec. 230(10(a)(i).

202.   Notwithstanding the statutory prohibition against administrative prosecutions such as the present one,  the defendants continue to take aim at the plaintiff and at other physicians in New York who provide competitive medical service pursuant to ILADS guidelines.

203.   The defendants are using their official positions as state officials as well as the license disciplinary process in New York in a concerted attempt to create a monopoly for IDSA guidelines based medical services, to control the prices of such services in accordance with insurance prescribed rates, to horizontally reallocate market share of patients to themselves and like physicians who offer Lyme disease medical service exclusively by IDSA standards.

204.   In the present case, the defendants stopped at nothing to further and stage their conspiracy to unreasonably restrict Plaintiff's competitive medical services and to disguise their conduct in the mantle of legitimacy.

205.   In violation of New York law, the defendants conducted open inquiries into Plaintiff's general practice of medicine by ILADS guidelines and obtained medical records in hopes of finding violations of the law; they appointed an IDSA practitioner, supporter and proponent (Meyers) to conduct the statutory interview mandated by PHL Sec. 230(10)(a)(i) and to produce an ROI report which was fraught with fabrications, bias, knowingly false statements and the interviewer's own views and opinions against ILADS guidelines based medical services; they presented the tainted ROI to the BPMC committee in order to create the false impression of legitimacy to their conspiracy to stage the bad faith prosecution and to violate the Sherman Antitrust Act; they are proceeding with Plaintiff's prosecution in excess of their powers and

jurisdiction as circumscribed by PHL Sec. 230-9b; they failed to obtain another committee consensus to the prosecution after the effective date of the prohibitions of PHL Sec. 230-9b; they are about to use the license disciplinary process to further the bad faith prosecution as well as defendants' conspiracy to violate the Sherman Antitrust Act.

206.    The defendants  furthered and continue to further their bad faith prosecution of the Plaintiff  in a concerted attempt to create a monopoly for IDSA based medical services, to control the prices of such services in accordance with insurance prescribed rates, to horizontally reallocate market share of patients to themselves and like physicians who do not practice by ILADS guidelines but instead practice by IDSA guidelines and in an overall attempt to eliminate competitive medical service offered by ILADS guidelines altogether.

207.    In the present case, the defendants stopped at nothing to further and stage their conspiracy to unreasonably restrict Plaintiff's competitive medical services and to disguise their conduct in the mantle of legitimacy.

208.    Instead of outright dismissing the Meyers ROI and the attempt at prohibited prosecution under the provisions of PHL Sec. 230-9b and the amendments of PHL Sec. 230(10)(a)(i)(A), the defendants sanctioned and currently approved the continuation of such bad faith prosecution notwithstanding the statutory prohibitions against the same.

209.    They further engaged and continue to engage in the fashioning of the SOC which is disguised to masquerade a bad faith prosecution into something that is unrelated to any of the issues which are the underlying subject matters of the ROI, of the committee's review and of the underlying investigation.   Those issues were related exclusively to Plaintiff's providing of competitive medical services under ILADS guidelines to all of the patients recited in the new SOC.

210.   The defendants continued and continue to stage the bad faith prosecution predicated upon the outdated and tainted Meyers ROI and the stale consensus of the BPMP committee which pre dated the enactment and effective dated of the statutory prohibitions of PHL Sec. 230-9b and Sec. 230(10)(a)(i)(A).

211.   Defendants' conduct as specified in this complaint is designed to facially legitimize their conspiracy to restrict Plaintiff's competitive medical services offered pursuant to  ILADS guidelines.

212.   By restricting the competitive medical services offered by the Plaintiff, the defendants are seeking to create a monopoly of their own general market allopathic medical services in violation of 15 USC Sec. 2. The defendants are also seeking to engage in horizontal market reallocation, horizontal restraint of trade, price fixing and unreasonable restraint of trade though their conduct as alleged above, in violation of 15 USC Sec. 1.


### VIII.   THE ANTICOMPETITIVE EFFECTS OF DEFENDANTS' ACTIONS AIMED AT VIOALTING THE SHERMAN ANTITRUST ACT.


### (a)   Restriction of competitive services and consumer choices.

213.   Defendants' anticompetitive conduct is aimed at forming a monopoly of IDSA guidelines based medical services while restricting competitive medical services offered by physicians to Lyme disease services under ILADS guidelines.

214.   This conduct would have severe anticompetitive effects on interstate commerce as well as on patients, business and competitors like the Plaintiff who provide ILADS based medical services in New York and to patients who come to New York to receive such services from all over the country.

41

215.   As a result of the proposed restrictions of trade and the proposed exclusion and restriction of competitive medical services based on ILADS guidelines, patients from New York seeking such treatments will have to expend more money to travel to out of state physicians who provide similar services as the plaintiff in states where no restrictions exist.

216.   Worst off, patients will lose the choice of receiving ILADS based Lyme disease medical treatment through the Plaintiff or other similar providers.

217.   The patients will lose the freedom of choice in selecting competitive ILADS based Lyme disease medical treatments to the exclusion of paralleling treatments offered by physicians under IDSA guidelines. Some patients who opt to receive ILADS based medical treatments exclusively will have to forgo such treatments altogether because of their unavailability in the state of New York.

218.   In addition, tens of thousands of patients suffering from chronic persistent Lyme disease  in the New York endemic area will receive no medical services at all for such medical conditions because the IDSA physicians and the defendants herein simply do not recognize such medical conditions to exist and simply reject any notion of treatment of such conditions by ILADS guidelines.

219.   The elimination of ILADS guidelines based medical treatments through ad hoc adjudication also would amount to a bypassing of the State Administrative Procedure Act rule making process. It also would amount to an unjustified departure from the prohibitions of PHL Sec. 230-9b and the amendments of PHL Sec. 230(10)(a)(i)(A).

220.   Physicians who offer ILADS guidelines based medicinal services will have to reduce their supply of patient services when they no longer have the option to provide those

services to their patients because of the restraint of trade sought to be imposed by the defendants while aiming at the restriction of Plaintiff's services.

**(b)** **Horizontal restraint of trade and reallocation of market share.**

221.    The end effect of defendants' anticompetitive conduct is horizontal restraint of trade and horizontal market reallocation.

222.    Specifically, the defendants are at the same horizontal market level as the Plaintiff with respect to market share distribution of patients who need medical services for Lyme disease services.

223.    Their proposed restraint of trade will have the net effect of depriving the Plaintiff and every physician in New York similarly situated from patient market share and specifically from the market share of the patients who are seeking medical services aimed at combating Lyme disease which are based upon the ILADS guidelines.

224.    The intended effect of defendants' proposed restraint of trade is to reallocate the patient market share exclusively to the monopoly created by defendants' actions which allows only IDSA guideline based medical services to be provided to patients in New York.

225.    The patient market share seeking ILADS guidelines based medical services will be inevitably directed by defendants' actions to Plaintiff's competitors who offer exclusively  medical services based on IDSA guidelines.

226.    Defendants' actions are also aimed at controlling market prices for medical services through their action. IDSA based medical services are traditionally reimbursed by insurance payers while ILADS medical services are not.

227.    When reimbursed by payers, the rate of the services and reimbursement is capped and dictated by the insurer's service schedules given to the plan participants. Upon information

and belief, the defendants themselves are participants in insurance plans and their medical services are paid for by insurers at the rates dictated and provided by the insurers.   The defendants do not want physicians who offer competitive medical services pursuant to ILADS guidelines to compete and make any more money than the defendants themselves though the offering of the competitive services.

228.    Defendants' anticompetitive actions are seeking to curtail market competition and from preventing other physicians from making more profits than the defendants from medical services which are not price capped by insurance schedules and by defendants' anticompetitive conduct.

   **(c)      The proposed restraint of trade aimed at ILADS guidelines based
             medical services is not reasonably necessary or narrowly tailored
             to any legitimate objective.**

229.    Defendants' proposed restraint of ILADS  guidelines medical   services has no legitimate objective in the context of the Sherman Antitrust Act.

230.    For starters, the legislature of the state of New York  acknowledges and permits the offering of ILADS based services and specifically prohibits prosecution of physicians who offer the  same  under  the  prohibitions  of  PHL  Sec.  230-9b  and  the  amendments  to  PHL  Sec. 230(10)(a)(i)(A).

231.    By contrast, the defendants and the IDSA lead physicians openly and publicly encourage the outlawing and elimination of medical services based on ILADS through the use of the medical disciplinary process.

232.    As  set  forth  above  the  defendants,  and  their  IDSA  co conspirators  recently published an article denouncing the "politicians" who dare passing statutory provisions protecting physicians who render Lyme related medical services other than the ones predicated on IDSA

44

guidelines.  They encouraged the elimination of ILADS based medical services through the license disciplinary process. See exhibit "E" hereto.

233.    A restriction of Plaintiff's ILADS guidelines based medical services through defendants' anticompetitive conduct eviscerates the New York statutory prohibitions of PHL Sec. 230-9b, furthers the conspiracy to violate the Sherman Antitrust Act and to stage a bad faith prosecution and amounts to an unexplained departure from defendants' own empowering statutes. The prosecution itself  is an act which is ultra vires as a matter of law.

234.    The only effect of defendants' proposed elimination of ILADS guidelines based medical services, using the investigative and license disciplinary process is to eliminate the competition which the New York legislature allowed to take place in the first place, and to render the provisions and prohibitions of PHL Sec. 230-9b void or illusory at best.

235.    The new restraint of trade is also not reasonably necessary because physicians in New York have been safely providing ILADS guidelines based medical  services to their patients, as recognized by the legislature's enactment of PHL Sec. 230-9b.

236.    The only beneficiaries of defendants' restraint of ILADS guidelines based medial services are office and hospital based physicians who exclusively offer IDSA guidelines based medical services. That group of physicians includes the licensee defendants in this action.

237.    In short there is no legitimate purpose for defendants' proposed restriction of ILADS guidelines based  medical services.

(d).    **The proposed restraint of trade will cause the Plaintiff irreparable harm.**

238.    If the defendants are allowed to proceed with their staged formal process to restrain ILADS guidelines based medical services offered by the Plaintiff, his business which relies

exclusively on providing such services will be irreparably harmed. He will be forced to go out of business and close his offices.

239.    Defendants' actions will cause the Plaintiff to lose substantial revenue from New York based patients as well as from national based patients who seek Plaintiff's medicine services.

240.    Plaintiff's employed staff as well as other physicians, laboratories and health care entities which do business with the plaintiff will be affected by defendants' actions as well.

241.    The revenue generated by Plaintiff's patients pay for the employees' salaries as well as for the services provided by in state and out of state health related service providers such as laboratories referred physicians and referred health care practitioners.

242.    Defendants' actions in restricting the type of medical services offered by the Plaintiff's will also have a negative impact on Plaintiff's good will with existing New York and national clients. The Plaintiff will lose all his present and future patients because he only treats patients who are seeking ILADS guidelines based Lyme related medical services.

243.    Plaintiff's losses will be irreparable because defendants' actions will damage Plaintiff's reputation for quality of care by labeling Plaintiff's ILADS guidelines based medical services as illegal in New York. Such actions taken by the defendants are in contravention of the existing statutory schemes which specifically protect such medical services from being eliminated through administrative prosecutions.

244.    Moreover, Plaintiff's losses will be difficult to calculate. ILADS guidelines based medical services is an evolving cutting age field which is acceptable and accepted by an exponentially growing segment of consumers who become educated about the benefits of such medical services.

245.   Plaintiff's patients opt for ILADS based medical services to the exclusion of medical services based on IDSA guidelines because the later medical services do not provide the patients with any relief regarding chronic Lyme disease conditions.

246.   Restricting the medical services offered by the Plaintiff will force the Plaintiff to withdraw his services from New York and close his business.

247.   Disrupting Plaintiff's ILADS based medical services business and excluding the same from the market  at this juncture will cause an injury both to the Plaintiff and to the patients who seek his services that is difficult to quantify.

248.   Plaintiff's increase in business has been so great in the past two years that his past revenues have no relationship to the likely future success.  Quantifying exactly how much business the Plaintiff would have lost, but for the proposed restrictions on trade, would be difficult.

249.   Defendants' interference with market forces during a time when Plaintiff's business gathered recognition and increased good will and during a time when ILADS guidelines based medical services are actively sought by increasing ranks of patients will obstruct competition and plaintiff's growth and will limit patient's market choices of medical services.

### IX.   FACTUAL BACKROUND RELATED TO CLAIMS OF CONSTITUTIONAL VIOLATIONS AND REQUST FOR RELIEF UNDER OF 42 USC SEC. 1983.

249.   Defendants' acts and actions as set forth hereinabove are about to violate Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the US Constitution which protect against bad faith prosecutions.

250.   The defendants acted and are about to further act in furtherance of the staging of a bad faith prosecution for the following reasons: (1) they used the tainted  ROI of co-defendant Meyers, an IDSA implant competitor, to justify and stage a bad faith prosecution in furtherance of

their conspiracy to violate the Sherman Antitrust act by excluding Plaintiff's competitive medical services from the New York market; (2) they are seeking to maintain a bad faith prosecution in violation of the explicit prohibitions of PHL Sec. 230-9b regarding the same; (3) they staged and worded a statement of charges which was purposely deigned to appear as having  no connection or relevancy to the specific issues which are the subject matter of the underlying investigation and of the ROI, which specifically identified Plaintiff's Lyme disease diagnosis and treatment provided exclusively under ILADS guidelines; (4) in bad faith they implanted and used Meyers, an IDSA infectious disease medical director to narrate the tainted ROI which was in turn used by the defendants to stage the bad faith prosecution; (5) they did not obtain the consent of a Committee of the BPMP for the present prosecution after the effective date of the prohibitive provisions of PHL Sec. 230-9b and the amendments to PHL Sec. 230(10)(a)(i)(A);  (6) they inexplicably are seeking to depart form the statutes with constrict their own powers and jurisdiction; (7) they fabricated issues which were not confined to the respective identified issues being investigated.

251.    In staging the bad faith prosecution, the defendants themselves acted outside the scope of their powers and subject matter jurisdiction of the New York investigative and statutory mandated interviewing scheme as alleged above in this complaint.

252.    In bad faith, the defendants chose to use as a predicate for their staged bad faith prosecution Meyers' ROI which was plagued by knowingly false statements, IDSA biased insertions and knowingly false representations as alleged above in this complaint and in Plaintiff's affidavit, Exhibit "F" hereto.

253.    The proposed bad faith prosecution is brought by the defendants in furtherance of their conspiracy to violate the Sherman Antitrust Act as alleged hereinabove. The other purpose

of the bad faith prosecution is to harass and intimidate the Plaintiff for the offering of competitive ILADS guidelines medical services in New York.

254.    A bad faith prosecution is one brought by the state or state officials or a state agency against an individual to retaliate against or to harass the plaintiff or one which is brought in direct contravention of a specific statutory prohibition against such prosecution, in this case PHL Sec. 230-9b.

255.    A bad faith prosecution is also one aimed at deterring an individual from exercising his constitutionally protected rights or depriving the individual of the protection of constitutionally protected rights.

256.    A bad faith prosecution is also one which is brought in contravention of statutory provisions which specifically prohibit such prosecutions form being maintained in the first place.

257.    The Plaintiff has the constitutional right to be free from bad faith prosecution. The paradigm of bad faith prosecution applies in this jurisdiction to professional license disciplinary prosecutions.

258.    The defendants do not have powers or subject matter jurisdiction to use the medical license investigative and administrative disciplinary process as a cover for violations of the Sherman Antitrust Act.

259.    The defendants are about to further violate Plaintiff's constitutionally protected due process rights under the Fourteenth Amendment of the US Constitution in bypassing the provisions of the New York SAPA rule making process. They are seeking to abrogate and erode the prohibitory provisions of PHL Sec. 230-9b through a bad faith ad hoc adjudicatory proceeding aimed at banning ILADS guidelines based medical services altogether.

49

260.    A showing of the existence of a bad faith prosecution is tantamount to the showing of irreparable harm which mandates the issuance of an injunction pursuant to 42 USC Sec. 1983 by this court.

261.    This is an action brought inter alia under 42 USC Sec. 1983 for injunctive relief seeking to enjoin the forthcoming violation of Plaintiff's constitutionally protected civil rights, namely his due process right ensured by the Fourteenth Amendment of the US Constitution and New York Constitution to be free from bad faith prosecutions.

262.    These foregoing facts mandate the issuance of a federal injunction under 42 USC Sec. 1983 aimed at enjoining the further violation of Plaintiff's constitutionally protected due process rights.

## (X)    CONSIDERATIONS REGARDING VIOLATION OF FOURTH AMENDMENT.

263.    As it can be seen from Plaintiff's affidavit (Exhibit "F" hereto) and the attachments thereto some of the letters which are in Plaintiff's possession and which depict Respondent's demands for the medical records of the various patients in question indicate that the defendants obtained the medical records of the patients in question in violation of Plaintiff's Fourth Amendment rights.

264.    As can be seen from the same demand letters, the Defendants did not give any basis for any of their random request for medical records nor do they state any purpose for such request. Rather the Defendants uniformly use a form letter citing PHL Sec. 230(10)(l) as the statutory authority for the random unexplained demand for medical records and shortening the time thirty days time to answer provided by NY Education Law Sec. 6530 to a randomized 10 days.

265.  The threat of discipline under PHL Sec, 6530(28) in the event that the plaintiff does not provide the demanded medical records and the absence of an avenue to seek judicial review of

Plaintiff's medical record demands violate Plaintiff's Fourth Amendment rights.

266.     Such randomized demands for medical records are illegal under the provisions of New York law and under the Fourth Amendment of the US Constitution. The aimless demands for medical records which are specific to medical services rendered pursuant to ILADS guidelines are further evidence of the staging of the bad faith prosecution and of the conspiracy to trigger a license prosecution for the purposes of eliminating the competitive medical services offered by the Plaintiff.

267.     The prohibition against investigative fishing expeditions and the necessity for a showing that a request for medical records must be relevant to the subject matter of the complaint impose constitutional limitation of agency investigations powers.

268.     In addition, any statutory scheme which give the inspector on the grounds unlimited powers to seek the production of business records (in this case medical records) under the penalty of disciplinary action and without providing a licensee the opportunity to seek judicial review of the request is ipso facto unconstitutional.

269.     In short, all the medical records of the patients now in question and subject to the SOC were obtained pursuant to an unconstitutional provision of New York Law, to wit: Education Law Sec. 6530(28).

270.     The statutory provision mandates that the licensee must respond to a request for documents within 30 days of such communication or face disciplinary penalties. The statutory provision does not afford the plaintiff an opportunity to pre-compliance judicial review of the reasonableness of the request.

271.    As set forth below the Plaintiff is seeking a declaratory judgment pursuant to 28 USC Sec. 2201 et.seq. declaring Education Law Sec. 6530(28) unconstitutional on its face and as applied.

272.    In addition, the defendants are not authorized to conduct an unlimited and general inquisition into the affairs of persons within their jurisdiction solely on the prospect of possible violations of law being discovered. There must be authority, relevancy, and some basis for inquisitorial action.

273.    In their quest to stage the bad faith prosecution and to eliminate plaintiff's competitive medical services provided under ILADS guidelines the defendants violated Plaintiff's Fourth Amendment rights.

274.    Consequently, based upon the doctrine of the fruit of the poisonous tree, the defendants are barred from maintaining any prosecution predicated upon the medical records which were obtained in violation of Plaintiff's Fourth Amendment rights and based upon documents which were obtained under a statute which is facially and as applied unconstitutional, to wit: Education Law Sec. 6530(a)(10).

### (XI).   THE ABSTENTION DOCTRINE IS INAPPLICCABLE BECAUSE THE DEFENDANTS' PROPOSE TO MAINTAIN A BAD FAITH PROSECUTION.

275.    The abstention doctrine is inapplicable to the present case because the bad faith exception squarely applies.

276.    The defendants threatened and are about to proceed with the bad faith prosecution for no other reason than harassment and for the reason of furthering their own conspiracy to violate the Sherman Antitrust Act as alleged hereinabove.

277.    The defendants staged the bad faith prosecution which is now brought in contravention of specific statutory provisions which are relatively recent, namely PHL Sec. 230-9b.

278.    Federal courts do not abstain in actions where bad faith prosecutions are at issue.

## (XII)  PARADIGMS OF ADMINISTRATIVE EXHAUSTION DO NOT APPLY IN THIS FEDERAL ACTION.

279.    The administrative exhaustion exceptions of futility, inadequate administrative remedies, the agency acting outside the scope of its powers and subject matter jurisdiction and constitutional violations squarely apply in this case.

280.    Neither the defendants, not the State Office of Administrative hearings have any subject jurisdiction to hear and fashion Plaintiff's claims for antitrust violations. There are no administrative remedies akin to federal statutory relief provided by 15 USC Sec. 26 for defendants' proposed antitrust violations.

281.    Federal Courts are the ones who have exclusive subject matter jurisdiction to grant relief pursuant to the Sherman and Clayton Antitrust Acts, as provided by 15 USC Sec. 4. The defendants are not authorized to award or issue antitrust injunctions against their own conduct specified in this complaint.

282.    Moreover, the New York administrative forums which are the DOH and the BPMC are not vested with powers and jurisdiction to adjudicate or render any remedy with respect to Plaintiff's claims of bad faith prosecution.

283.    Finally, the Plaintiff calls into question the constitutionality of: (a) regulation 10 NYCRR Sec. 51.9(d)(2) which strip the Judicial Hearing Officer's powers from dismissing the proceedings based upon legal and constitutional challenges, thereby depriving the plaintiff of a

meaningful opportunity to be heard at a meaningful time and in a meaningful manner regarding constitutional and legal issues challenging the charges and (b) 10 NYCRR Sec. 51.8 which prohibits any disclosure in administrative license disciplinary cases and which limit disclosure of the evidence and expert witness' opinions before trial by excluding a summary of the expert's opinions to be rendered at the time of trial and (c) Education Law Sec 6530(28) which fails to provide the Plaintiff with an avenue for judicial review of defendants' unfettered powers to demand business and medical records.

284.    The administrative forums do not have subject matter jurisdiction to adjudicate

285.    Consequently, the inadequate administrative remedy exception applies to this case.

286.    Moreover, where the complaint raises pure issues of law and constitutional violations administrative exhaustion also does not apply. That is the case here.

287.    Finally, where the agency and its constituents, in this case the BPMC and the defendants, acted and are about to act in excess of the scope of their subject matter jurisdiction, and in direct violations of the prohibitions of PHL Sec. 230-9b and the amendments of PHL Src. 230(10)(a)(i)(A) administrative exhaustion also does not apply.

288.    In this case, it is alleged that the defendants acted and are about to act in excess of their subject matter jurisdiction by using their official capacities and misusing the provisions of New York law to further their conspiracy to violate the Sherman Antitrust Act.

289.    The complaint also alleges ultra vires acts because the defendants are seeking to restrict ILADS guidelines based medical services while inexplicably departing and violating the prohibitive provisions of New York law cited above.

290.    Moreover, the Plaintiff seeks the declaration of the unconstitutionality of the Commissioner's regulations:  10 NYCRR Sec. 51.9(d)(2); 10 NYCRR Sec. 51.8 and Education law Sec. 6530(28).

291.    The declaration of the unconstitutionality of a statute or a regulation is a matter which is specifically relegated to the subject matter jurisdiction of the courts. Administrative tribunals do not have subject matter jurisdiction to entertain or issue relief on such issues.

293.    Moreover, here the defendants are seeking to maintain the license disciplinary process based upon the foregoing unconstitutional regulations, resolution of these issues is mandatory before proceeding against the plaintiff with administrative disciplinary process which is based upon unconstitutional procedural regulations.

## AS AND FOR FIRST CLAIM FOR INJUNCTION UNDER
## THE CLAYTON ANTITRUST ACT, 15 USC SEC. 26.

294.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

295.    The defendants engaged and continue to engage in a conspiracy to violate 15 USC Sec. 1 and 15 USC Sec. 2 by using their official position as state officials to impose unreasonable restrictions on medical trade in New York and  to exclude competitive ILADS guidelines based medical services to the public in New York.

297.    The defendants seek to further their scheme in violation of the Sherman Antitrust Act by engaging in horizontal restraint of trade, horizontal market allocation and price fixing as set forth above and by making use of their official positions and of the New York license disciplinary process in furtherance of their conspiracy to violate the Sherman Antitrust Act.

298.    The defendants further seek to violate the Sherman Antitrust Act 15 USC Sec. 2 by seeking to form a monopoly of IDSA guidelines based medical services for their own financial benefit and for that of hospital and office based physicians who offer exclusively IDSA guidelines based medical services to Lyme diseases consumers.

299.    Defendants' actions and the proposed prosecution of the Plaintiff have an anticompetitive effect as alleged above.   Their actions are aimed at restricting market and consumer choice, controlling prices and market reallocation of patients who ILADS guidelines based medical services.

300.    Defendants' actions have multiple anticompetitive effects on the medical services market as alleged above in this complaint.

301.    The defendants' actions harm and threaten to cause irreparable harm to the Plaintiff as alleged above in this complaint.

302.    For all the foregoing reasons the Plaintiff requests that this Court issue relief in the form of an injunction pursuant to 15 USC Sec. 26.

303.    The Plaintiff requests that the Court enjoin the defendants, their servants, agents and assigns pursuant to 15 USC Sec. 26 from acting or in any way causing anyone to act to restrict Plaintiff's competitive ILADS guidelines based medical services under the color of New York law or through any other actions aimed at restricting Plaintiff's ILADS based medical practice.


**AS AND FOR A SECOND  CLAIM - PERMANENT INJUNCTION
PURSUANT TO 42 USC SEC. 1983 ENJOINING
DEFENDANTS' THREATENED CONSTITUTIONAL VIOLATIONS.**

304.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

305.    The defendants violated and are about to violate Plaintiff's constitutionally protected rights safeguarded by the Fourteenth Amendment of the US Constitution to be free from bad faith prosecutions, as set forth above in this complaint.

307.    The defendants continue to violate Plaintiff's constitutionally due process right by fabricating and threatening to maintain such bad faith prosecution against the plaintiff in furtherance of their conspiracy to violate the Sherman antitrust Act.

308.    42 USC Sec. 1983 vests this Court with subject matter jurisdiction to issue equitable relief, including an injunction to enjoin the further deprivation of Plaintiff's due process rights including a bad faith prosecution.

309.    Consequently, the Plaintiff is seeking a permanent injunction pursuant to 42 USC Sec. 1983 as follows: (a) permanently enjoining the defendants from maintaining a bad faith prosecution against the Plaintiff as alleged in this complaint; (b) permanently enjoining the defendants from using the New York license investigative process and formal license disciplinary process for the purposes of furthering their conspiracy to violate the Sherman Antitrust Act; (c) permanently enjoining the defendants from acting in excess of their powers and subject matter jurisdiction as alleged in this complaint.

### AS A THIRD CLAIM - DECLARATORY JUDGMENT PURSUANT TO 28 USC §2201.

310.    Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

311.    The Plaintiff alleges that (a) regulation 10 NYCRR Sec. 51.9(d)(2) which strips the Judicial Hearing Officer's powers from dismissing the proceedings based upon legal and constitutional challenges, thereby depriving the plaintiff of a meaningful opportunity to be heard at a meaningful time and in a meaningful manner regarding constitutional and legal issues

challenging the charges is facially unconstitutional and (b) 10 NYCRR Sec. 51.8 which prohibits any disclosure in administrative license disciplinary cases and which limit disclosure of the evidence and expert witness' opinions before trial by excluding a summary of the expert's opinions to be rendered at the time of trial is facially unconstitutional inasmuch as the same regulation deprives the Plaintiff from his constitutional right to amount a meaningful defense and to prepare a meaningful cross examination and witness confrontation  a the regulation protects the very same testimony from being discovered and the Plaintiff is exposed to trial by ambush; (c) the provisions of PHL Sec. 6530(28) which enable the defendants to submit a licensee to the license disciplinary process for failure to provide or respond to the defendants' demand for medical records within 30 days without providing a licensee to obtain pre compliance judicial review of such request for records is unconstitutional on its face; (d) the medical records which were obtained under the penalties of Education law Sec. 6530(28) should be suppressed by this Court as the use of the same in any proceeding violates Plaintiff's Fourth Amendment Rights.

312.    In addition to the allegations set forth above in this complaint, Defendants' proposed actions in seeking to restrict Plaintiff's provision of ILADS guidelines based medical services violate US Constitution Art. I Sec. 8 Cl. 3 by imposing an unreasonable restriction and burden on commerce and by restricting the choice of medical services available to out of state patients who seek Plaintiff's services.

313.    Moreover, the defendants' proposed prosecution of the plaintiff violates New York Law and Plaintiff's due process rights to be free from bad faith prosecution  as codified in PHL230-9b and the amendments of PHL Sec. 230(10)(a)(i)(A).

314.    The Plaintiff hereby requests that the Court issues a declaratory judgment pursuant to 28 USC Section 2201 as follows:

(A)     Declaring the actions and acts of the defendants, their agents, servants and assigns in engaging in bad faith prosecution as set forth above as illegal and in excess of the powers and subject matter jurisdiction of the defendants;

(B)     Declaring defendants' actions and acts as being in excess of defendants' powers and subject matter jurisdiction and as acts in furtherance of their conspiracy to violate 15 USC Secs. 1 and 15 USC Sec. 2 as set forth in this complaint.

(C)     Declaring defendants' actions and acts as alleged in this complaint as acts which are in violation of Plaintiff's constitutionally protected due process rights under the Fourteenth Amendment of the US Constitution;

(D)     Declaring defendants' actions and acts as alleged in this complaint as acts which are in violation of US Constitution Art. I Sec. 8 Cl. 3;

(E)     Declaring defendants' actions taken in violation of PHL Sec. 230-9b as alleged in this complaint as actions which are null and void as a matter of law;

(F)     Declaring defendants' proposed restraint of ILADS based medical services  as acts which violate 15 USC Secs. 1 and 15 USC Sec. 2 as set forth in this complaint.

(G) Declaring regulation 10 NYCRR Sec. 51.9(d)(2) which strip the Judicial Hearing Officer's powers and jurisdiction enabling the JHO to dismiss  the proceedings based upon legal and constitutional challenges facially unconstitutional inasmuch as the same , deprives the plaintiff of a meaningful opportunity to be heard at a meaningful time and in a meaningful manner regarding constitutional and legal issues challenging the charges is facially unconstitutional;

(H) Declaring regulation 10 NYCRR Sec. 51.8 which prohibits any disclosure in administrative license disciplinary cases and which limit disclosure of the evidence and expert witness' opinions before trial by excluding a summary of the expert's opinions to be rendered at

the time of trial as facially unconstitutional inasmuch as the same regulation deprives the Plaintiff of his constitutional right to amount a meaningful defense and to prepare a meaningful cross examination and witness confrontation  a the regulation protects the very same testimony from being discovered and the Plaintiff is exposed to trial by ambush;

(I)     Declaring the provisions of Education law Sec. 6530(28) facially and as applied unconstitutional for failure to provide the licensee with an opportunity or a procedural vehicle for pre compliance judicial review;

(J)     Declaring the defendants' proposed use of the medical records of patients "AS" though "G" recited in the SOC as unconstitutional and illegal under the fruit of the poisonous tree doctrine.

### AS A FOURTH CLAIM –PRELIMINARY INJUNCTION AAND TEMPORARY RESTRAINING OPRDER PURSUANT TO FRCVP 65.

315.     Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same were set at length herein.

316.     For the purposes of preserving the status quo and preventing the defendants from causing further injuries to the Plaintiff by further violating his constitutionally protected due process rights as well as by further violating the Sherman Antitrust Act as alleged above, the Plaintiff is seeking a preliminary injunction a TRO pursuant to FRCVP 65 as follows:

(a)     Preliminarily enjoying and restraining the defendants, their servants agents and assigns from further engaging in anti-competitive conduct in violation of the Sherman Antitrust Act by using the New York formal license disciplinary process to further their conspiracy to restrict Plaintiff' ILADS guidelines based  competitive medical  services as alleged in this complaint;

(b)      Preliminarily enjoining and restraining the defendants, their servants, agents and assigns from violating or causing to violate Plaintiff's constitutionally protected due process rights as set forth in this complaint by maintaining a bad faith prosecution;

(c)      Preliminarily enjoining and restraining the defendants from taking any action or causing any action to be taken against Plaintiff's medical license as such actions are illegal, unconstitutional and in derogation of Plaintiff's due process rights as alleged in this complaint;

(d)      Preliminarily enjoining and restraining the defendants from violating or causing to violate   US Constitution Art. I Sec. 8 Cl. 3 as alleged in this complaint;

(e)      Preliminarily enjoining and restraining the conduct of any scheduled disciplinary hearings sought to commence on June 12, 207 (Exhibit "A" hereto) because such hearings are conducted in furtherance of the bad faith prosecution and in furtherance of the conspiracy to violate the Sherman Antitrust Act.

317.    The Plaintiff alleges that in the absence of a preliminary injunction the defendants will inflict further irreparable harm on the Plaintiff by: (1) violating his Fourteenth Amendment constitutionally protected due process rights by maintaining a bad faith prosecution for the purposes of furthering their antitrust conspiracy as alleged in this complaint and (2) will further violate US Constitution Art. I Sec. 8 Cl. 3.

318.    A violation of constitutional rights amounts to irreparable harm in the context of an application for a preliminary injunction.

319.    In addition, Plaintiff's business interests will be irreparably harmed for all the reasons articulated above in this complaint.

320.    The Plaintiff is likely to succeed of the merits of this action for all the reasons articulated above in this complaint.

321.   The balancing of the equities is in plaintiff's favor and there are no hardships ensuing to the defendants because of the issuance of a preliminary injunction.

322.   A preliminary injunction will prevent further harm to the Plaintiff during the pendency of this action and the irreparable harm caused to Plaintiff's constitutional rights and business because of defendants' violation of the Sherman antitrust Act and of the US Constitution as set forth above.

323.   On the other hand, the defendants have no legitimate reason to act in violation of the US Constitution and the Sherman Antitrust Act as set forth in this complaint.

324.   Preventing further constitutional violations and upholding Plaintiff's constitutional rights to be free from bad faith prosecution is in the public interest.

325.   In support of the claim for a preliminary injunction the Plaintiff will submit a separate motion with supporting memorandum after the filing of this complaint.

WEHREFORE the Plaintiff demands judgment against the defendants as follows:

1.   In the first claim an injunction pursuant to 15 USC Sec. 26 in the form and substance alleged in this complaint;

2.   In the second claim, and injunction pursuant to 42 USC Sec. 1983 in the form and substance alleged in this complaint;

3.   In the third  claim, a declaratory judgment pursuant to 28 USC Section 2201 in the form and substance alleged in this complaint.

4.      In the fourth claim, a preliminary and a permanent injunction pursuant to FRCVP

65 in the form and substance alleged in this complaint.;

Dated:  May 3, 2017.


                                        Attorney for the Plaintiff

                                        /s/ JACQUES G. SIMON
                                        Jacques G. Simon, Esq.
                                        SDNY Bar No. JS9212
                                        100 Jericho Quadrangle, Suite #208
                                        Jericho, NY 11753
                                        Phone (516) 378-8400
                                        Fax:    (516) 378-2700
                                        email: jgs@jacquessimon.com

## VERIFICATION

STATE OF NEW YORK                    )

COUNTY OF WESTCHESTER      )

 BEFORE ME, the undersigned authority, on this day personally appeared Daniel Cameron M.D. known to me to be the person whose name is subscribed to the instrument herein below, and having been duly sworn, upon oath, deposes and states as follows:

 1. My name is Daniel Cameron , I am over the age of twenty-one (21) years, of sound mind and have never been convicted of a felony.  I am an adult resident of the State of New York and am fully competent and capable to testify herein.  I am a physician licensed to practice in the State of  New York and I am the Plaintiff herein.  I have personal knowledge of all the facts set forth herein, and I am able to swear, and I hereby do swear, that all the facts and statements herein are true and correct.

 2. I have read the above Complaint and know all the facts therein to be true to the best of my knowledge except those facts stated upon information and belief and as to those I believe them to be true. The source for my belief is the documents and the correspondence mentioned in the Complaint.


                 _____

                 Daniel Cameron, M.D.


Sworn to and subscribed before me
on the   8   day of May, 2017

_____
Notary Public, State of New York
My Commission expires   4 | 20 | 1 1

AMY GREEN
Notary Public - State of New York
NO. 01GR6323610
Qualified in Westchester County
My Commission Expires Apr 20, 2019