# EXHIBIT "A"

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

| IN THE MATTER OF DANIEL CAMERON, MD | STATEMENT OF CHARGES |
|---|---|

Daniel Cameron, M.D., the Respondent, was authorized to practice medicine in New York State on or about January 14, 1985, by the issuance of license number 161183 by the New York State Education Department.

## FACTUAL ALLEGATIONS

A. Respondent treated Patient A, a 41-year-old woman, from on or about January 28, 1997, through in or about June 2008. At the initial visit, the Patient reported leg pain, poor sleep and, that she had been evaluated by numerous physicians, for various joint complaints, with no definitive diagnosis. In March 1999, the Patient was admitted to a psychiatric facility for narcotic detoxification and upon discharge, returned to Respondent for continued treatment. In August 1999, based on ongoing complaints of poor concentration and fatigue, the Patient was evaluated at Helen Hayes Hospital and was diagnosed with Bipolar Disorder/Personality Disorder and Narcotic Abuse. In or about July 2003, the Patient moved to Florida. Respondent continued to provide the Patient with prescriptions for narcotics through 2005. (Patient names are identified in

1

the Appendix). Respondent's care and treatment deviated from minimally accepted standards of care in that:

1. Respondent repeatedly failed to take and/or note an adequate history of present illness.

2. Respondent repeatedly failed to perform and/or note an appropriate physical examination.

3. Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation.

4. Respondent treated the Patient inappropriately with an ongoing and escalating antibiotic regimen without appropriate sequential physical examinations and clinical re-assessments for consideration of any alternative diagnoses and/or treatment.

5. Respondent failed to follow-up, in a timely fashion, when the Patient developed possible adverse reactions to administered therapy.

6. Respondent inappropriately prescribed narcotics for the Patient.

7. Respondent inappropriately prescribed medication to the Patient without appropriate medical indications.

8. Respondent failed to maintain a record that accurately reflects the care and treatment rendered to the Patient.

B. Respondent treated Patient B, a 38-year-old woman, from on or about October 15, 1998, through on or about March 7, 2008, for complaints that included severe fatigue,

disturbed sleep, irritability, joint pains, frequent sore throats, nausea and diarrhea. At her initial visit, the Patient reported that 9 years earlier she had been told she had a borderline Lyme test and was treated with antibiotics and, that in the past 5 years she had frequent bouts of fatigue and was diagnosed with Chronic Fatigue Syndrome. In December 1998, the Patient was seen by a neurologist who, based on an abnormal MRI, recommended a lumbar puncture but one was not done. In June 1999, the patient had an abnormal brain SPECT. In January 2002, the patient had her first and only physical examination in Respondent's practice. In January 2008, ten years after the initial MRI, the Patient had a second MRI, which was again abnormal and, a neurologist performed a lumbar puncture. The results of the lumbar puncture were negative for Lyme disease but revealed positive oligoclonal band proteins which are consistent with the diagnosis of Multiple Sclerosis. Respondent's care and treatment deviated from minimally accepted standards of care in that:

1. Respondent repeatedly failed to take and/or note an adequate history of present illness.

2. Respondent failed to obtain and/or review prior medical records to confirm the earlier diagnoses and treatment.

3. Respondent repeatedly failed to perform and/or note an appropriate physical examination.

4. Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation.

3

5.  Respondent treated the Patient inappropriately with an ongoing and escalating antibiotic regimen without appropriate sequential physical examinations and clinical re-assessments for consideration of any alternative diagnoses and/or treatment.

6.  Respondent inappropriately prescribed medication to the patient without appropriate medical indications.

7.  Respondent failed to order and/or perform a lumbar puncture to evaluate the Patient, based on ongoing complaints, an abnormal MRI and, an abnormal SPECT scan.

8.  Respondent failed to reconsider a broad differential diagnosis based upon radiographic studies and ongoing complaints that included among other symptoms: slurred speech, memory loss, fatigue, headaches and worsening symptoms in the warm weather, thereby depriving the patient of an accurate diagnosis and years of effective therapy for her progressive disease.

9.  Respondent failed to follow-up, in a timely fashion, when the Patient experienced possible adverse reactions to administered therapy.

10. Respondent failed to maintain records that accurately reflect the care and treatment rendered to the Patient.

C. Respondent treated Patient C, a 47-year-old male, from in or about January 1995, through in or about May 2009. The Patient suffered from morbid obesity and diabetes. In June 1999, the Patient presented with a diagnosis of phlebitis of his right leg.

4

Respondent began treating the Patient with parenteral antibiotics and thereafter, Respondent added the diagnosis of Lyme disease. Respondent's care and treatment deviated from minimally accepted standards of care in that:

1. Respondent repeatedly failed to take and/or note an adequate history of present illness.

2. Respondent repeatedly failed to perform and/or note an appropriate physical examination.

3. Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation.

4. Respondent treated the Patient inappropriately with an ongoing antibiotic regimen without further medical or surgical investigation of chronic venous insufficiency.

5. Respondent failed to maintain records that accurately reflects the care and treatment rendered to the Patient.

D. Respondent treated Patient D, a 49-year-old woman, from on or about October 10, 1997, through in or about February 2005. Respondent saw the Patient for evaluation of possible Lyme disease. At her initial visit, the Patient complained of problems with concentration, fatigue and, multiple joint pains. The Patient reported that she had previously been seen by a neurologist and had a normal MRI and CT scan. In December 1998, a neurologist recommended that Respondent order and/or perform

5

spinal fluid analysis but, this was not done. Respondent's care and treatment deviated from minimally accepted standards of care in that:

1. Respondent repeatedly failed to take and/or note an adequate history of present illness.

2. Respondent repeatedly failed to perform and/or note an appropriate physical examination.

3. Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation.

4. Respondent failed to appropriately evaluate the Patient, based on complaints of ongoing dizziness.

5. Respondent treated the Patient inappropriately with an ongoing and escalating antibiotic regimen without appropriate sequential physical examinations and clinical re-assessments for consideration of any alternative diagnoses and/or treatment.

6. Respondent failed to maintain records that accurately reflects the care and treatment rendered to the Patient.

E. Respondent treated Patient E, a 46-year-old woman, from on or about July 8, 2008, through in or about August, 2008. At her initial visit, the Patient reported that she had been diagnosed with Parkinson's disease in May 2008, and that in early May 2008, she had a tick bite, a bull's eye rash and had been treated with antibiotics and intra muscular injections for approximately seven weeks. Respondent ordered a PICC

6

line for the administration of parenteral antibiotics, which was placed on July 17, 2008. One week later, the Patient complained of pain in her neck and shoulder. On July 31, 2008, the Patient reported extreme pain. The Patient had a venous Doppler study which indicated deep vein thrombosis. The Patient was admitted to Northern Westchester Hospital where the PICC line was removed and the patient was placed on anticoagulant therapy. Respondent's care and treatment deviated from minimally accepted standards of care in that:

1. Respondent repeatedly failed to take and/or note an appropriate history.

2. Respondent failed to obtain and/or review prior medical records to confirm the earlier diagnosis and treatment.

3. Respondent repeatedly failed to perform and/or note an appropriate physical examination.

4. Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation.

5. Respondent inappropriately treated the Patient with an antibiotic regimen without appropriate physical examinations and clinical re-assessments for consideration of any alternative diagnoses and/or treatment.

6. Respondent ordered and/or prescribed a PICC line and parenteral antibiotics without medical necessity.

7. Respondent failed to appropriately evaluate the Patient, in a timely fashion, when she complained of pain associated with the PICC line.

7

8.  Respondent failed to maintain a record that accurately reflects the care and treatment rendered to the Patient.

F.  Respondent treated Patient F, a 36-year-old woman, on February 19, 2008, and May 5, 2008. The Patient reported that her recent medical history included a termination of pregnancy in October 2007, diverticulitis in November 2007 and, a diagnosis of Lyme disease for which she was treated with a five-week course of antibiotics in January 2008. Respondent's care and treatment deviated from minimally accepted standards of care in that:

1.  Respondent repeatedly failed to take and/or note an appropriate history.

2.  Respondent failed to obtain and/or review prior medical records to confirm the earlier diagnosis and treatment.

3.  Respondent repeatedly failed to perform and/or note an appropriate physical examination.

4.  Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation including but not limited to other infections or inflammatory processes.

5.  Respondent failed to appropriately follow-up on abnormal laboratory results including abnormal liver function tests and an elevated sedimentation rate.

6.  Respondent failed to evaluate the Patient by ordering a CT scan of the abdomen and pelvis as well as additional blood testing.

7.   Respondent failed to maintain a record that accurately reflects the care and treatment rendered to the Patient.

G.  Respondent treated Patient G, a 28-year-old man, from on or about August 11, 2009, through on or about September 28, 2010. The Patient presented for evaluation of possible Lyme disease with complaints of headache, fatigue, memory loss, myalgia and back and neck pain. The Patient had a history of bipolar disorder for which he was under the care of a psychiatrist and, he had been diagnosed with and treated for Lyme disease 16 years earlier. A previous evaluation by a neurologist included negative MRI and MRA of the brain. Respondent's care and treatment of the Patient deviated from minimally accepted standards of care in that:

1.   Respondent repeatedly failed to take and/or note an adequate history of present illness.

2.   Respondent repeatedly failed to perform and/or note an appropriate physical examination.

3.   Respondent failed to appropriately construct a differential diagnosis and pursue a thorough diagnostic evaluation.

4.   Respondent failed to appropriately evaluate the Patient based on his ongoing complaints of chronic headaches and cognitive dysfunction.

5.   Respondent treated the Patient inappropriately with an ongoing and escalating antibiotic regimen without appropriate sequential physical examinations

9

and clinical re-assessments for consideration of any alternative diagnoses and/or treatment.

6.  Respondent inappropriately prescribed medications without appropriate medical indications and/or without considering possible drug interactions.

7.  Respondent failed to follow-up, in a timely fashion, when the Patient experienced possible side effects.

8.  Respondent failed to follow-up appropriately on abnormal test results.

9.  Respondent failed to maintain records that accurately reflects the care and treatment rendered to the Patient.

## SPECIFICATION OF CHARGES

### FIRST SPECIFICATION

### NEGLIGENCE ON MORE THAN ONE OCCASION

Respondent is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(3) by practicing the profession of medicine with negligence on more than one occasion as alleged in the facts of:

1. Paragraph A and its subparagraphs and/or Paragraph B and its subparagraphs and/or Paragraph C and its subparagraphs and/or Paragraph D and its subparagraphs and/or Paragraph E and its

10

subparagraphs and/or Paragraph F and its subparagraphs and/or Paragraph G and its subparagraphs.

## SECOND SPECIFICATION

### INCOMPETENCE ON MORE THAN ONE OCCASION

Respondent is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(5) by practicing the profession of medicine with incompetence on more than one occasion as alleged in the facts of:

2. Paragraph A and its subparagraphs and/or Paragraph B and its subparagraphs and/or Paragraph C and its subparagraphs and/or Paragraph D and its subparagraphs and/or Paragraph E and its subparagraphs and/or Paragraph F and its subparagraphs and/or Paragraph G and its subparagraphs.

## THIRD THROUGH NINTH SPECIFICATIONS

### GROSS NEGLIGENCE

Respondent is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(4) by practicing the profession of medicine with gross negligence on a particular occasion as alleged in the facts of the following:

3. Paragraph A and its subparagraphs.

4. Paragraph B and its subparagraphs.

11

   5. Paragraph C and its subparagraphs.

   6. Paragraph D and its subparagraphs.

   7. Paragraph E and its subparagraphs.

   8. Paragraph F and its subparagraphs.

   9. Paragraph G and its subparagraphs.

## TENTH SPECIFICATION

## GROSS INCOMPETENCE

Respondent is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(6) by practicing the profession of medicine with gross incompetence as alleged in the facts of the following:

10. Paragraph A and its subparagraphs and/or Paragraph B and its subparagraphs and/or Paragraph C and its subparagraphs and/or Paragraph D and its subparagraphs and/or Paragraph E and its subparagraphs and/or Paragraph F and its subparagraphs and/or Paragraph G and its subparagraphs.

## ELEVENTH SPECIFICATION

## FAILURE TO MAINTAIN RECORDS

Respondent is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(32) by failing to maintain a record for each patient which accurately reflects the care and treatment of the patient, as alleged in the facts of:

11. Paragraph A and A (8) and/or Paragraph B and B(10) and/or Paragraph C and C(5) and/or Paragraph D and D(6) and/or Paragraph E and E(8) and/or Paragraph F and F(7) and/or Paragraph G and G(9).

DATE: April 27, 2017
New York, New York

*[signature]*

Roy Nemerson
Deputy Counsel
Bureau of Professional Medical Conduct

13

## APPENDIX "A"

Patient A          A███ R███
Patient B          D████ G████
Patient C          E███ K████
Patient D          I█████ H██████
Patient E          E████ W████████
Patient F          M████ V███
Patient G          R███ J██████

NEW YORK STATE             DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

| IN THE MATTER OF DANIEL CAMERON, M.D. | NOTICE OF HEARING |

TO: Daniel Cameron, MD
657 Main Street
Mt. Kisco, NY 10549

PLEASE TAKE NOTICE:

A hearing will be held pursuant to the provisions of N.Y. Pub. Health Law §230 and N.Y. State Admin. Proc. Act §§301-307 and 401. The hearing will be conducted before a committee on professional conduct of the State Board for Professional Medical Conduct on June 12, 2017, at 10:00 a.m., at the Offices of the New York State Department of Health, 90 Church Street, 4th Floor, New York, NY 10007, and at such other adjourned dates, times and places as the committee may direct.

At the hearing, evidence will be received concerning the allegations set forth in the Statement of Charges, which is attached. A stenographic record of the hearing will be made and the witnesses at the hearing will be sworn and examined. You shall appear in person at the hearing and may be represented by counsel who shall be an attorney admitted to practice in New York state. You have the right to produce witnesses and evidence on your behalf, to issue or have subpoenas issued on your behalf in order to require the production of witnesses and documents, and you may cross-examine witnesses and examine evidence produced against you. A summary of the Department of Health Hearing Rules is enclosed.

YOU ARE HEREBY ADVISED THAT THE ATTACHED CHARGES WILL BE MADE PUBLIC FIVE BUSINESS DAYS AFTER THEY ARE SERVED.

Department attorney: Initial here _____

The hearing will proceed whether or not you appear at the hearing. Please note that requests for adjournments must be made in writing and by telephone to the New York State Department of Health, Division of Legal Affairs, Bureau of Adjudication, Riverview Center,150 Broadway - Suite 510, Albany, NY 12204-2719, ATTENTION: HON. JAMES HORAN, DIRECTOR, BUREAU OF ADJUDICATION, (henceforth "Bureau of Adjudication"), (Telephone: (518-402-0748), upon notice to the attorney for the Department of Health whose name appears below, and at least five days prior to the scheduled hearing date. Adjournment requests are not routinely granted as scheduled dates are considered dates certain. Claims of court engagement will require detailed Affidavits of Actual Engagement. Claims of illness will require medical documentation.

Pursuant to the provisions of N.Y. Pub. Health Law §230(10)(c), you shall file a written answer to each of the charges and allegations in the Statement of Charges not less than ten days prior to the date of the hearing. Any charge or allegation not so answered shall be deemed admitted. You may wish to seek the advice of counsel prior to filing such answer. The answer shall be filed with the Bureau of Adjudication, at the address indicated above, and a copy shall be forwarded to the attorney for the Department of Health whose name appears below. Pursuant to §301(5) of the State Administrative Procedure Act, the Department, upon reasonable notice, will provide at no charge a qualified interpreter of the deaf to interpret the proceedings to, and the testimony of, any deaf person. Pursuant to the

terms of N.Y. State Admin. Proc. Act §401 and 10 N.Y.C.R.R. §51.8(b), the Petitioner hereby demands disclosure of the evidence that the Respondent intends to introduce at the hearing, including the names of witnesses, a list of and copies of documentary evidence and a description of physical or other evidence which cannot be photocopied.

At the conclusion of the hearing, the committee shall make findings of fact, conclusions concerning the charges sustained or dismissed, and in the event any of the charges are sustained, a determination of the penalty to be imposed or appropriate action to be taken. Such determination may be reviewed by the Administrative Review Board for Professional Medical Conduct.

> THESE PROCEEDINGS MAY RESULT IN A DETERMINATION
> THAT YOUR LICENSE TO PRACTICE MEDICINE IN NEW
> YORK STATE BE REVOKED OR SUSPENDED, AND/OR
> THAT YOU BE FINED OR SUBJECT TO OTHER SANCTIONS
> SET OUT IN NEW YORK PUBLIC HEALTH LAW §§230-a.
> YOU ARE URGED TO OBTAIN AN ATTORNEY TO
> REPRESENT YOU IN THIS MATTER.

DATE April 27 2017

Roy Nemerson
Deputy Counsel
Bureau of Professional Medical Conduct

New York, NY

Inquiries should be directed to:
Leslie Eisenberg, Associate Counsel
Bureau of Professional Medical Conduct
90 Church Street, 4th Floor
New York, NY 10007
212-417-4450

## SECURITY NOTICE TO THE LICENSEE

The proceeding will be held in a secure building with restricted access. Only individuals whose names are on a list of authorized visitors for the day will be admitted to the building

No individual's name will be placed on the list of authorized visitors unless written notice of that individual's name is provided by the licensee or the licensee's attorney to one of the Department offices listed below.

The written notice may be sent via facsimile transmission, or any form of mail, but must be received by the Department **no less than two days prior to the date** of the proceeding. The notice must be on the letterhead of the licensee or the licensee's attorney, must be signed by the licensee or the licensee's attorney, and must include the following information:

_____

Licensee's Name_____Date of Proceeding_____

Name of person to be admitted_____

Status of person to be admitted_____
(Licensee, Attorney, Member of Law Firm, Witness, etc.)

_____
Signature (of licensee or licensee's attorney)

_____

This written notice must be sent to:

New York State Health Department
Bureau of Adjudication
Riverview Center
150 Broadway - Suite 510
Albany, NY 12204-2719
Fax: 518-402-0751