*Jacques G. Simon*
*Attorney at Law*

———

*email: jgs@jacquessimon.com*
*url: jacquessimon.com*

| | | |
|---|---|---|
| **New York City Offices** | | **Long Island, NY Offices** |
| 750 Third Avenue, | | 100 Jericho Quadrangle, |
| 9th Floor | * Bar Admissions: NY, CT, GA. TX | Suite #208 |
| New York, New York 10016 | | Jericho, NY 11753 |
| Telephone: (212) 906-9077 | Respond to □NY □LI | Telephone: (516)378-8400 |
| Facsimile: (212) 906-0010 | | Facsimile: (516)378-2700 |

June 5, 2017

VIA EMAIL
c/o Court Deputy Mr. Donnie Fletcher
donnie_fletcher@nysd.uscourts.gov
VIA FACSIMILE TRANSMISSION
FAX NO. 212-805-7912

Hon. John G. Koeltl, USDJ
Chambers, Courtroom 12B
US District Court, SDNY
500 Pearl Street,
New York, NY 10007

                                          Re: Cameron v. Zucker et.al.
                                          Case No. 1:17-cv-3420JGK

Dear Judge Koeltl:

      I represent the plaintiff in connection with the above referenced matter. As the Court is aware I was out of the country until June 3, 2017 in the evening. Today the Plaintiff filed a Supplemental Affidavit, docket entry 54 and my Declaration asking for leave to file the Supplemental Affidavit, Docket Entry 55. Because of the 20 page limitations, I am sending via facsimile transmission only the supplemental affidavit and my declaration filed today totaling 16 pages without the attached exhibits. I have spoken to Mr. Fletcher and he told me to send him via email the attached exhibits I through III, the complete affidavit and declaration and this letter.

1

Exhibits I through III referenced in the Cameron affidavit and my declaration were made available to us on June 2, 2017 by the defendants. The defendants were in exclusive possession of these exhibits and they were unknown to the Plaintiff until June 2, 2017. Addressing Exhibits I through III which were recently disclosed by the defendants is crucial to the bad faith claim and the substantiation of the allegations of the complaint for all of the reasons articulated in Dr. Cameron's affidavit. Including this affidavit and the additional exhibits as part of the record is also crucial to Plaintiff's case.

I respectfully submit that due to the June 2, 2017 disclosure of Exhibits I through III the Plaintiff could not have filed the Supplemental Affidavit any sooner than today. I have spoken to assistant attorney General James Hershler about this matter and he stated that he will oppose the filing of the supplemental affidavit. The Plaintiff requests that in light of the stringent circumstances and the late availability of the exhibits addressed in his Supplemental Affidavit, he be permitted to file the same and that filings Docket Nos. 54 and 55 be accepted by the Court as part of the record.

I am sending a copy of this correspondence and of the attachment to opposing counsel as well.

Respectfully submitted:

/Jacques G. Simon

JGS/mfa/encls
c.c.: via email: Maryam Jazini Dorcheh
Maryam.Jazini@ag.ny.gov

James M. Hershler, Esq.
James.Hershler@ag.ny.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No.: 1:17-cv-3420JGK

_____X

DANIEL CAMERON M.D.

                                                                            Plaintiff

-vs.-

Howard Zucker M.D. in his official capacity as Commissioner of
New York State Department of Health; Keith W. Servis in his official
capacity as Director of Office of Professional Medical Conduct)"OPMC");
Arthur S. Hengerer, M.D., in his official capacity as Chair of the BPMC
for Professional Medical Conduct ("BPMC"); Carmella Torrelli, Vice Chair of the
BPMC for Professional Medical Conduct; Katherine Hawkins, M.D., J.D.,
Executive Secretary of the BPMC; Patrick Sullivan, Investigator, NYS
OPMC; Burt Meyers MD, NYS OPMC medical director;
Kimberly A. O'Brien, administrative law judge; NYS
Department of Health, for antitrust injunction only; NYS Office
or professional Medical Conduct, for antitrust injunction only;
"John Doe" 1-108 and "Jane Doe" 1-108, the last two sets of Defendants
being fictitious names, the parties intended being the members of the
New York BPMC.

                                                                           Defendants.

_____X

**SUPPLEMENTAL DECLARATION OF PLAINTIFF'S COUNSEL
IN FURTHER REPLY TO AFFIRMATION OF ROY NEMERSON
AND REQUEST FOR LEAVE TO FILE SUPPLEMENTAL
<u>AFFIDAVIT OF DANIEL CAMERON.</u>**

       JACQUES G. SIMON, an attorney duly admitted to the practice of law before the US District Court, SDNY declares the following under the penalties of perjury pursuant to 28 USC Sec. 1746:

       1.       I am Plaintiff's attorney in this action as well as in the underlying administrative proceedings sought to be enjoined. I am fully and personally familiar with all of the facts and circumstances pertaining to this litigation.

1

2. On June 2, 2017 the defendants disclosed the following documents to the Plaintiff in the context of the administrative proceedings: (1) the CV of Alan Sander M.D. (Exhibit I); (2) a narrative report of Alan Sanders M.D. regarding patient "G" (Exhibit "II") and (3) a narrative report regarding patients "A" though "G" (Exhibit III). These exhibits were in defendants' exclusive possession all along since the filing of this action. The Plaintiff did not have the foregoing documentation at the time when his initial reply papers were filed.

3. As the Court is aware I was out of the country through June 3, 2017. On June 5, 2017, the Plaintiff filed a Supplemental affidavit addressing Exhibits "I" through III disclosed by the defendants.

4. As it can be seen from the supplemental affidavit of Daniel Cameron filed today, addressing these exhibits in the context of this action and the bad faith prosecution is crucial to the issues to be determined by this Court.

5. The Plaintiff therefore requests leave to file the Supplemental affidavit of Daniel Cameron with the attached exhibits and to present the same at the time of the hearing on June 6, 2017.

6. I conferred with defendants' lead attorney James Hershler today and I advised that this certification will be filed requesting leave to file the additional affidavit and exhibits of Daniel Cameron in conjunction with the instant motion. Mr. Herschler stated that he will object to the filing of the supplemental affidavit.

7. The supplemental affidavit and the attachments could not have been filed any sooner than today in light of the exhibit disclosure by the defendants which was made on June 2, 2017 and the intervening weekend. The information and the affidavit are crucial to the issues pertaining to the hearing.

8.  "I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 5, 2017

/s/ Jacques G. Simon

## CERITIFCATION OF SERVICE

I hereby certify under the penalties of perjury that on June 5, 2017 the foregoing document was filed via ecf filing system and served electronically upon the following attorneys of record representing the defendants herein:

Maryam Jazini Dorcheh
Maryam.Jazini@ag.ny.gov

James M. Hershler, Esq.
James.Hershler@ag.ny.gov

Assistant Attorneys General

New York State Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271-0332

/s/Jacques G. Simon

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No.: 1:17-cv-3420JGK

_____X
DANIEL CAMERON M.D.

                         Plaintiff

     -vs.-

Howard Zucker M.D. in his official capacity as Commissioner of
New York State Department of Health; Keith W. Servis in his official
capacity as Director of Office of Professional Medical Conduct)"OPMC");
Arthur S. Hengerer, M.D., in his official capacity as Chair of the BPMC
for Professional Medical Conduct ("BPMC"); Carmella Torrelli, Vice Chair of the
BPMC for Professional Medical Conduct; Katherine Hawkins, M.D., J.D.,
Executive Secretary of the BPMC; Patrick Sullivan, Investigator, NYS
OPMC; Burt Meyers MD, NYS OPMC medical director;
Kimberly A. O'Brien, administrative law judge; NYS
Department of Health, for antitrust injunction only; NYS Office
or professional Medical Conduct, for antitrust injunction only;
"John Doe" 1-108 and "Jane Doe" 1-108, the last two sets of Defendants
being fictitious names, the parties intended being the members of the
New York BPMC.

                         Defendants.
_____X

## SUPPLEMENTAL AFFIDAVIT OF DANIEL CAMERON
## IN FURTHER REPLY TO AFFIRMATION OF ROY NEMERSON.

STATE OF NEW YORK      )
                                   )
COUNTY OF WESTCHESTER  )

      DANIEL CAMERON MD, being duly sworn deposes and says:

      1.     I am the Plaintiff in the instant action and as such I am fully familiar with all the facts and circumstances of this litigation.

      2.     I am a physician dully licensed to practice medicine in the State of New York and I maintain a medical practice at 657 Main Street, Mount Kisco, NY 10544. I practice internal Medicine.

3. As stated in my initial affidavit in support of the motion for a preliminary injunction, I diagnose and treat patients affected by chronic Lyme disease in accordance with the standard of care prescribed by the guidelines of International Lyme and Associated Diseases Society ("ILADS").

4. I submit this supplemental affidavit in support of the relief sought in the Verified Complaint and in support of my instant motion and application for emergency relief in the form of a Preliminary Injunction. I submit this affidavit in further reply to the affirmation of Roy Nemerson.

5. That affirmation contends that the current prosecution is not brought in violation of PHL Sec. 230(9-b) and that the same has no bearing on my practice of medicine and on my offering of Lyme disease related medical services pursuant to ILADS guidelines. The affirmation further negates any attempt to stage the prosecution against me in violation of PHL Sec. 230-9b and to form a monopoly of the medical services provided by the defendants and their co-conspirators in accordance with IDSA guidelines as set forth in the Verified Complaint and my initial affidavit.

6. The defendants' through Mr. Nemerson's affirmation assured this Court that far from prosecuting me for "the recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases", as prohibited by PHL Sec. 230-9b, the defendants are seeking to prosecute me based upon issues which have nothing to do with the IDSA/ILADS divergent views of Lyme disease diagnosis and treatment as explained in the Verified Complaint and my initial affidavits.

7. The defendants also assured this Court that they are not seeking to place me out of business for practicing medicine by ILADS guidelines and that they will never get involved with

the controversy surrounding Lyme disease and the divergent scientific views held by ILADS and IDSA physicians.

8. As discussed below, defendants' new disclosures made on June 2, 2017 completely contradict defendants' position and assurances of prosecutorial legitimacy made in the Nemerson affirmation.

9. Since the submission of my initial affidavit and reply affidavit, a crucial part of information was released by the defendants on June 2, 2017. The information further supports my claim for bad faith prosecution and for defendants' anticompetitive conduct in seeking to restrict competitive Lyme disease services provided by ILADS guidelines.

10. Specifically, the defendants submitted the Curriculum Vitae as well as the reports of a physician, Alan Sanders, M.D. whom they intend to use in order to further the bad faith prosecution as alleged in the complaint. A copy of Dr. Sanders' CV is annexed hereto as Exhibit "I". Annexed hereto as Exhibit "II" is copy of Dr. Sander's report regarding Patient "G" ("RG") (See schedule of patients and annexed as "A" to the Verified Complaint). Annexed hereto as exhibit "III" is Dr. Sanders' report regarding patients "A" through "F" identified in the schedule of patients annexed to the Statement of Charges.

11. For starters, in staging the bad faith prosecution as alleged in the complaint, the defendants openly are using an admitted member of the Infectious Disease Society of America ("IDSA"), namely Dr. Sanders to stage and further their bad faith prosecution agenda. As it can be seen from Dr. Sanders' CV (Exhibit "A" hereto), admittedly he is a member of the IDSA.

12. As explained in the complaint, the IDSA physician group not only openly rejects any medical services provided by ILADS guidelines and furthers defendants' agenda of bad faith prosecution in violation of PHL Sec. 230(9-b), but that group openly calls for the prosecution of

any physician who does not offer medical services in accordance with the IDSA guidelines. See Exhibit "E" to the Verified Complaint. In this case the IDSA and the defendants actually provided a paid so called "expert" to further defendants' bad faith prosecution. The defendants openly selected such IDSA member to further the prosecution in violation of PHL Sec. 230(9-b).

13. The defendants in this case are not using an objective physician familiar with and practicing medicine by ILADS guidelines, in order to prosecute their administrative case. They are not using an individual who provides and analysis of my treatment of the patients "A" through "G" under the ILADS guidelines.

14. Rather they are using an IDSA member who champions and furthers IDSA views and conspires with the defendants to prosecute me in violation of the prohibitions of PHL Sec. 230(9-b) and to from a trade monopoly in favor of physicians who offer medical services exclusively under IDSA guidelines.

15. As stated in the Verified Complaint, and as further articulated below, the defendants use IDSA physicians such as Dr. Sanders in the prosecutorial phase and Dr. Meyers in the investigative stage, for the purposes of creating the illusory appearance of legitimacy of prosecutions taken in violation of PHL Sec. 230(9-b).

16. The defendants are also using the IDSA practicing physicians in the staging of the bad faith prosecution and for the further purposes of generating reports which are completely at odds with the provisions of PHL Sec. 230(9-b) and now with the amendments of PHL Sec. 230(10)(a)(i)(A), in an attempt to give the appearance of prosecutorial legitimacy and to hide the conspiracy to violate the Sherman Antitrust Act.

17. As stated in the Verified Complaint and in my initial affidavit, the staged IDSA based Report of Investigation generated by the medical director defendant Burt Meyers, and now

the reports of Dr. Sanders (Exhibits "I" and "II" hereto) directly support my claims for bad faith prosecution and violation of the antitrust statutes and of PHL Sec. 230(9-b).

14. A cursory review Dr. Summers' own statements in the reports annexed hereto as Exhibit "II" and "III" illustrates that the instant prosecution is motivated by defendants' subjective aim at limiting and eliminating medical services offered under ILADS guidelines rather than by objective reviews and the trial of issues which have no relevancy to the prohibitions of PHL Sec. 230(9-b).

15. Exhibit II hereto exemplifies defendants' motivation to prosecute me in violation of the provisions of PHL Sec. 230(9-b).

16. On page "1" of the report (Exhibit II), Dr. Sommers, and in turn the defendants admit that they are applying IDSA based criteria to stamp out my diagnosis of Lyme by ILADS guidelines and my "recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases", as prohibited by PHL Sec. 230-9b.

17. As explained in the Verified Complaint and as exemplified by Exhibits "B" and C" annexed to the Verified Complaint, a major difference in the approach to the diagnosis of Lyme disease between ILADS and IDSA physicians (both of which are recognized as legitimate by the entire medical community and now by the US Government as alleged in the Complaint) is the IDSA's straight application of the CDC two tiered ELISA/Western Blot serologic testing criterial for the diagnosis of Lyme.

18. By contrast, as set forth in Exhibit "B" to the Verified Complaint (ILADS guidelines), the ILADS scientific publication recognizes that there are shortcomings and problems

5

with the two-tiered testing methodology which is IDSA propounded and which is based upon CDC surveillance criteria only.

19. The IDSA methodology also limits the diagnosis of Lyme based upon the presence or absence of an erythema Migrans rash ("EM rash"). The ILADS diagnostic methodology in turn recognizes the scientific limitations of the two tiered CDC surveillance testing and further recognizes that Lyme disease exists in the absence of an EM rash. See ILADS guidelines - exhibit "B" to the Verified Complaint and my initial affidavit.

20. As it can be seen from my initial affidavit I diagnosed and treated Lyme in patients "A" through "G" exclusively by ILADS standards. The diagnosis of Lyme by ILADS standards is according to IDSA physicians the ""recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases", as provided by PHL Sec. 230(9-b).

21. Dr. Sanders' report on the first page immediately attacks the diagnosis of Lyme in patient G based upon the straight application of the IDSA two tiered ELISA/Western Blot testing and his rejection of diagnostic methodology of Lyme by ILADS guidelines or the ""recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases", as provided by PHL Sec. 230(9-b).

22. Dr. Sanders states in specific terms in Exhibit II page 1, fifth paragraph from the bottom of the page, that "despite the negative laboratory results the patient is given a diagnosis of Lyme Disease, with the explanation that the testing is most likely non-supportive, perhaps because

6

of a one month treatment course of antibiotic doxycycline, prescribed for acne in 2007". He narrates the complete "laboratory investigation" which was done in the sixth paragraph from the bottom and concludes that the "Western Blot testing revealed a fully negative IgG result, and only a solitary IgM Band (p41) **which is non-diagnostic by CDC criteria for Lyme disease.**

23. The foregoing statements articulate in unequivocal terms that the defendants intend to violate PHL Sec. 230(9-b) and to use this report to prosecute me for not following the IDSA diagnostic criteria of Lyme stated in Dr. Somers in his report.

24. So as to underscore the defendant's subjective motivation to prosecute me in violation of PHL Sec. 239(9-b), in the "Conclusions" section of the report - Exhibit II p. 3, once again Sommers refers to his " thorough description of CDC criteria for the diagnosis and treatment of Lyme disease as provided in the prior exhaustive review of Dr C's records submitted in March 2010. ". That criteria, expressed at pp. 1-5 of Exhibit III hereto is nothing more and nothing less than a recapitulation of the IDSA based guidelines (compare Exhibit "C" to the Verified Complaint - IDSA guidelines).

25. As stated in my affidavit, in the Verified Complaint and as illustrated by the divergent guidelines of IDSA and ILADS (Exhibits "B" and "C" to the Verified Complaint), Dr. Somers' report is exactly the type of a document and report which is referenced in PHL Sec. 230(9-b) and based upon which the defendants are prohibited from maintaining the instant prosecution.

26. Dr. Sanders and in turn the defendants accept nothing but IDSA guidelines treatments and diagnostic modalities and base the instant prosecution upon my "recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases" for the purposes of forming a monopoly

of medical services offered by the defendants and IDSA practicing physicians and for the purposes of prosecuting me in violation of PHL Sec. 230(9-b).

27. Dr. Sanders continues to underscore the violation of PHL Sec. 230-9b by stating in no uncertain terms in the "conclusions" part of Exhibit II" hereto that the serologic tests for Lyme disease did not support the diagnosis. That is, as set forth above, a straight application of IDSA based diagnostic criteria and a formulation of a prosecution based upon a report made to the director which exclusively highlights my "recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases" and in violation of PHL Sec. 230(9-b).

28. In his affirmation Mr. Nemerson specifically states that both his attorneys and the Director of the OPMC rely on the expert consultations and reports to determine the nature of the charges and the course of the prosecution.

29. However, as set forth in the accompanying memorandum of law, PHL Sec. 230(9-b) specifically prohibits prosecutions of physicians such as myself which are predicated upon reports such as the one generated by Dr. Sanders (Exhibit II hereto) which rejects "recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne disease" and which are in violation of PHL Sec. 230(9-b).

30. At pp. 1 and 3 of Exhibit II hereto, Dr. Sanders takes aim at the use of combination long term antibiotics to treat Lyme disease. He states that such use of long term antibiotics is not scientifically recognized under the "well designed placebo controlled trials that were initiated by

NIAID and NIH that do not support long term antibiotic therapy for Lyme Disease". See Exhibit II page 3.

31. However, the use of long term combination antibiotics is scientifically recognized and published in the ILADS guidelines by the US Government in the National Guidelines Clearinghouse. See exhibit "B" to the complaint. Dr. Sanders' report specifically and admittedly targets my use of combination long term antibiotics in the treatment of Lyme disease as my "recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases" as defined by PHL Sec. 230(9-b).

32. The foregoing statutory provisions impose a blanket prohibition upon the Director and the defendants form maintaining a prosecution against me predicated on the foregoing recitations of the report of Dr. Sanders.

33. In this case the modalities used by me pursuant to ILADS guidelines admittedly include the use of long term combination antibiotics in the treatment of Lyme as stated in Dr. Sanders' report, Exhibit II hereto at p. 3.

34. Consequently, defendants' contention that their prosecution of me is not brought in bad faith and does not violate PHL Sec. 230(9-b) is simply unsupported and contradicted by their own evidence and reports of Dr. Sanders.

35. Exhibit "III" annexed hereto is Dr Sanders' report regarding patients "A" through "F". This report and its description of the IDSA paradigms applied by the defendants to the diagnosis and treatment of Lyme disease in patients "A" through "F" is also referenced in Exhibit II annexed hereto.

36. As it can be seen from pp. 1-4 Dr Sanders and in turn the defendants are using this report to prosecute me for stated failure to follow IDSA diagnostic and treatment criteria in the same manner as stated with respect to patient "G" hereinabove.

37. Dr. Sanders identified in Exhibit III at pp. 1-4 and in its entirety as well as in Exhibit II as the basis for defendants' prosecution maintained in violation of PHL Sec. 230(9-b) the following IDSA criteria which he states that do not appear in my medical records: (a) the diagnosis of Lyme disease in patients "A" through "F" in the absence of the EM rash; (b) the absence of positive two tiered ELISA/Western Blot tests; (c) and the use of long term antibiotics for the treatment of Lyme.

38. The foregoing theme and the rejection of the ILADS diagnostic and treatment approach to Lyme (Exhibit "B" to the Complaint) is recurrent with respect to each and every patient "A" through "F" in Dr. Sanders' report (Exhibit III hereto) as well as in the conclusions drawn at pp. 22-23 of the report.

39. Dr. Sanders' report contained in Exhibit III hereto clearly contradicts Mr. Nemerson's account that the prosecution is based on anything else than that which is prohibited by PHL Sec. 230(9-b), namely my diagnosis and treatment of Lyme by ILADS scientifically recognized standards (Exhibit "B" to the Verified Complaint).

40. Defendants' use of Dr. Sanders' reports which exclusively and explicitly identifies "the recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases" as the basis for my prosecution evidences the staging of the bad faith prosecution in violation of PHL Sec. 230(9-b).

41. For all the foregoing reasons and for all the reasons articulated in the Verified Complaint, my prior affidavits, My counsel's affidavits and the memoranda of law, I respectfully submit that the motion for a preliminary injunction be granted in its entirety.

*[signature]*
DANIEL CAMERON

Sworn to before me this
5th day of June 2017

*[signature]*
Notary Public

THOMAS G. ARNOLD
Notary Public, State of New York
No. 01AR6306993
Qualified in Putnam County
Commission Expires June 30, 2018

11

## CERITIFCATION OF SERVICE

I hereby certify under the penalties of perjury that on June 5, 2017 the foregoing document was filed via ecf filing system and served electronically upon the following attorneys of record representing the defendants herein:

Maryam Jazini Dorcheh
Maryam.Jazini@ag.ny.gov

James M. Hershler, Esq.
James.Hershler@ag.ny.gov

Assistant Attorneys General
New York State Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271-0332

/s/Jacques G. Simon